24942. HEXTER *et al. v.* BURGESS.

DECIDED MARCH 14, 1936.

*Smith, Smith & Bloodworth, R. E. Lee Field,* for plaintiffs in error.

*Hewlett & Dennis,* contra.

STEPHENS, J.  Billie Burgess, by her next friend, sued Southern Service Corporation, Joseph Hexter and Mrs. Joseph Hexter for damages for personal injuries.  In her petition she alleges that on January 4, 1933, about 2:40 p. m. the plaintiff was a passenger on a street-car in the City of Atlanta, which stopped at a regular stop on Peachtree Street, and the plaintiff alighted from the street-car and started toward the sidewalk when she was run into by an automobile driven by Mrs. Hexter; that the automobile approached the rear of the standing street-car at the reckless speed of 35 miles per hour, without stopping not less than 5 feet from the rear of the street-car and continuing on at said speed; that the driver of the automobile failed to check the speed of the automobile and gave no warning to the plaintiff of her intention to pass the street-car and the plaintiff who was then in the highway; that Southern Service Corporation and Joseph Hexter were the owners of the automobile which was being driven at the time by Mrs. Hexter, about the business of Southern Service Corporation and Joseph Hexter, the exact business being unknown to the plaintiff, but well known to the defendants; that the defendants, through Mrs. Hexter, were negligent in operating the automobile at a reckless speed; in failing to stop the automobile not less than 5 feet from the rear of the standing street-car; in failing to stop the automobile and remain stationary until all passengers were discharged from the street-car, all in violation of the statute law of Georgia; in failing to give any signal to the plaintiff of the approach of the automobile; that the plaintiff sustained numerous severe and permanent injuries which will leave her deformed mentally and physically; that she suffered excruciating pain and will continue to suffer for the remainder of

her life. By two amendments to the petition the plaintiff alleged that the "defendant Joseph Hexter customarily kept and used said automobile for his own pleasure, comfort and convenience and that of his family including his wife, and he furnished the same to his wife, Mrs. Joseph Hexter, for her pleasure, comfort and convenience, and that she was driving same at the time of the injury herein complained of for her pleasure, comfort and convenience in that she was returning to her home from the business district of Atlanta where she had been shopping."

Mr. and Mrs. Hexter filed a general denial, which they amended by alleging various facts and circumstances going to show that the plaintiff failed to exercise ordinary care in that she hurriedly left the street-car without any look-out or precaution for her own safety, going in a direction towards the eastern sidewalk and ran into the left rear fender or mudguard of the automobile; and that the plaintiff was guilty of contributory negligence in the particulars above set forth, which contributory negligence equaled or exceeded any negligence of the defendant, Mrs. Hexter, but said defendant denied that she was negligent in any of the particulars charged. The plaintiff filed another amendment alleging that she was only a schoolgirl and had no vocation, and that her injuries destroyed her capacity to work and earn money in the future, "and she sues for such losses." Counsel for the defendants made a motion for a nonsuit as to the Southern Service Corporation, which was granted. The jury found for the plaintiff $12,500 against both Mr. and Mrs. Hexter. A motion for new trial by the defendants was overruled.

1. It is insisted that a new trial should have been granted on the general grounds. It is claimed by the defendants that the evidence showed beyond dispute that the plaintiff alighted suddenly from the street-car without looking to see whether an automobile was traversing or about to traverse the space between the street-car and the curb, and that she proceeded to cross this space without looking out for an automobile. The preponderance of the testimony was to the effect that the plaintiff had barely gotten off the street-car and taken not more than two steps toward the sidewalk when she was struck by the front end or front fender of the automobile while it was going from 30 to 35 miles per hour, that she was hurled a distance of 20 to 30 feet, her body landing in

front of the street-car on the right hand rail of the track. Before alighting the plaintiff did not pause nor look for an approaching automobile. Must this failure be held, as a matter of law to be a want of ordinary care? Must every passenger getting off a street-car be required to pause and scan the street for law-breaking automobiles or can he assume that automobile drivers will drive according to law? The authorities on this question will be found in Huddy on Automobiles, Vol. 5-6, p. 184, §§ 109, 110. A number of decisions are cited to the effect that a person alighting from a street-car is under no duty to stop and look before getting off or while getting off the car, that he can assume that the provisions of law made for his protection will be obeyed by automobile drivers. See Sougstad v. Zils, 180 Wis. 464 (193 N. W. 656); Johnson v. Young, 127 Minn. 462 (149 N. W. 940). Some decisions hold that the question of negligence in such a case is for the jury.

2. The fourth and ninth grounds of the motion for new trial complain that the court refused a request to charge that "the law imposes the duty on all persons to exercise ordinary care to avoid the consequences of another's negligence, when such negligence is either apparent, or the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence;" and did charge that the duty of the plaintiff to exercise ordinary care to avoid the consequences of defendant's negligence, after such negligence arose and was impending, arises when the plaintiff either "knew of it or by the exercise of ordinary care on her part should have known of such negligence." The court had already charged that the plaintiff was required by the law to exercise ordinary care, just that care that every prudent person would exercise under the same or similar circumstances. The difference complained of is that, in the charge requested occurs the expression "the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence," while in the charge given the expression was that "the plaintiff knew of it or by the exercise of ordinary care should have known of such negligence." These two expressions are substantially equivalent. The one given by the court was probably easier for the jury to understand than the charge requested.

3. Several exceptions to the charge, which were argued at great length in the brief for the plaintiff in error, relate to the

effect of negligence by the plaintiff. It is claimed that the charge was confusing because in stating how the damages might be reduced on account of the plaintiff's negligence; this statement was qualified by a statement that, if the plaintiff's negligence amounted to want of ordinary care, the plaintiff could not recover at all. This was proper. The 6th ground of the motion abbreviated, alleges that the court refused a request to charge "if you further believe that the plaintiff was also guilty of some degree of negligence contributing to her injuries . . but that the negligence of the plaintiff was less than that of the defendant . . the plaintiff would be entitled to recover, but her recovery should be diminished" etc. The charge as given stated fairly and repeatedly the rule as to comparative negligence and its limitation. It was not error to refuse the request.

The use by the court of the distinction between "active" and "passive" negligence could be of no harm to the defendants, because the jury was told clearly that either active or passive negligence if shown as claimed by the defendants would bar the plaintiff from recovering. Furthermore the court charged separately on these two sorts of negligence, not confusing them as claimed by the plaintiffs in error.

4. At the close of the plaintiff's evidence, the defendant Mr. Hexter moved to dismiss the suit as to him. The motion was denied and he excepted. The motion for new trial also raises the question of his liability. For two reasons, it is denied that he is liable because the family-car doctrine does not make the husband liable for the negligence of the wife in driving the car, and because the husband was not the owner of the car, it being the property of a corporation of which he was president.

The first question has been decided by this court adversely to the contention of this plaintiff in error. *Petway* v. *McLeod*, 47 *Ga. App.* 647 (171 S. E. 225). Not only is the wife to be considered as a member of the husband's family, but an unmarried adult daughter, and a self-supporting adult son living with the father, are members of his family in such sense as to make him liable for their negligence in driving the family car. *Kennedy* v. *Manis,* 46 *Ga. App.* 808 (169 S. E. 319) ; *Hubert* v. *Harpe,* 181 *Ga.* 168 (182 S. E. 167). Likewise an unmarried sister living with an unmarried brother is a member of the brother's family, and the

brother is liable for her negligence in driving his car. *Levy* v. *Rubin*, 181 *Ga.* 187 (182 S. E. 176). The last two cases cited are decisions of the Supreme Court of Georgia. The more recent decisions can not properly be called "extensions" of the family-car doctrine. They are simply recognitions that the particular cases come within the principle of agency on which the doctrine is founded, as held in the case of *Griffin* v. *Russell*, 144 *Ga.* 275 (87 S. E. 10). In the case at bar the testimony of Mr. Hexter himself fully sustained the allegations of the plaintiff as to the family character of the car. The charge to the jury correctly made the husband's liability depend on the agency of the wife, and was exactly adapted to the issues of law and fact in this branch of the case. The requests to charge set out in the 7th and 8th grounds of the motion were substantially covered in the general charge.

In the 13th ground of the motion it is complained that the court charged: "The law places upon the husband the duty of furnishing pleasure and comfort and contributing to the convenience of the wife," and if the car was controlled by the husband, and he furnished the car to the wife for her pleasure, comfort and convenience, and she was at the time and place in question using the car for her pleasure, comfort and convenience, then her acts would be imputable to her husband. It is contended that there is no such duty on the husband as stated by the court. Whether this be true or not, the liability of the husband was correctly made to depend not on the duty but on the fact whether the husband furnished his wife with the car. It was immaterial whether the duty existed or not.

5. It is insisted there can be no recovery against the husband because he did not own the automobile. Agency, not ownership, is the test of liability. In this very case, a nonsuit was granted in favor of the owner of the car. While the car belonged to a corporation of which Mr. Hexter was president, it does not appear that anybody ever used it except Mr. Hexter and his wife. He furnished her the instrumentality which inflicted the injuries on the plaintiff and put her in charge of it. The jury could have reasonably inferred that Mrs. Hexter was using it in family business, as she had gone shopping in the business district of Atlanta where she had lunch with her husband and was returning to her home. The car was kept in a garage of the apartment in which the Hex-

ters lived. The custody, control and use of the car being exclusively in the Hexters, the jury could well find that it was a family car. In Boyd v. Close, 82 Colo. 150 (257 Pac. 1079), it was held that liability in such case is not confined to the owner and driver, but rests on agency, not on ownership. A like ruling was made in Mann v. Cook (Tex. Civ. App.), 23 S. W. (2d) 860. The judgment in the last case was reversed, in Cook v. Mann (Tex. Com. App.), 40 S. W. (2d) 72, on the ground that it was shown that the car was not used by the son as a family car of his father.

6. The plaintiffs in error concede that the charge requested in the 5th ground of the motion was covered by the general charge, except that the latter did not specifically mention the relative speeds of street-car and automobile as a circumstance which the jury might consider in determining whether Mrs. Hexter was negligent in not stopping not less than five feet from the rear of the standing street-car. Failure to comply with this law could not be excused on the ground that the automobile was traveling so fast that it could not be stopped as required. The court did charge the jury to consider all the facts and circumstances, the physical situation, the width and character of the street, "the relative positions of the automobile and the street-car at the time the street-car came to a standstill" etc. This was sufficient.

7. The 15th ground of the motion complains that the court distinguished between negligence in violating a statute, and other acts of negligence alleged in the petition, by calling the latter "common-law acts of negligence." This expression was used in order to distinguish the latter acts from an act which would constitute negligence per se. And the court told the jury it was for them to determine whether the alleged simple acts of negligence occurred and whether they constituted negligence, under the definition of negligence.

8. In the 16th ground of the motion, it is shown that a medical witness for the defendants was asked the following question: "Would you undertake to express an opinion as to the reading of any of these x-ray plates contrary to the diagnosis of those specialists in reading plates?" On objection, this question and the negative answer of the witness were ruled out. Obviously the intent of the question was to elicit an opinion from the physician that the diagnosis of the x-ray specialists was so authoritative that

he would not undertake to contradict it. This was not competent testimony. As well might a witness be introduced to testify that another witness was a truthful man. There would be no end to a case, if physicians were allowed to express their opinions as to the competence or incompetence of each other.

The 17th ground of the motion is virtually covered by what has been said about the 16th. The fact that a plaintiff's medical witness once had used a certain x-ray specialist was sought to be put in evidence, for the evident purpose of proving the capacity of the specialist, or the witness's opinion of his capacity.

9. It is complained that the verdict for the plaintiff of $12,500 is so grossly excessive as to indicate that the jury failed to diminish recovery in proportion to the negligence of the plaintiff, and were biased and prejudiced against the defendants. In view of the testimony as to the number and character of the injuries sustained by the plaintiff and the evidence as to the conduct of the plaintiff and the defendants as illustrating whether or not either of the parties was guilty of negligence proximately contributing to the plaintiff's injuries, it can not be said as a matter of law that from the size of the verdict it appears that the jury failed to diminish any recovery in proportion to the plaintiff's negligence or that the jury in arriving at the verdict were actuated by bias and prejudice against the defendants.

10. The evidence authorized the verdict found for the plaintiff, and no error appears.

*Judgment affirmed. Sutton and MacIntyre, JJ., concur. Jenkins, P. J., disqualified.*