THE CITY OF CHARLOTTE, A MUNICIPALITY, PLAINTIFF V. THOMAS ERTEL AND
CANDICE ERTEL, DEFENDANTS

No. COA04-1110

(Filed 17 May 2005)

1. **Eminent Domain; Evidence— fair market value—lay witnesses—opinion testimony**

    The trial court did not abuse its discretion in an airport expansion eminent domain case by preventing appellants from offering the testimony of four lay witnesses regarding the fair market value of appellants' property, because: (1) one witness's voir dire testimony tended to show that his opinion was based upon prior condemnation proceedings involving either his own property or other properties in the area which is an improper basis for valuing property in a current condemnation proceeding, and the noncondemnation property transfers of which he was aware or involved in occurred more than eight years prior to appellants' condemnation proceedings which the trial court found too remote to establish relevancy; (2) a second witness's testimony was excluded since his testimony would have to be intertwined with the condemnation overshadowing the process, and it would be fundamentally difficult for him to testify without something being said about the airport condemnation; (3) with respect to the third witness, his prior condemnation sale was unrelated to the airport expansion project and his two acre portion of the property was not being sold under threat of condemnation; and (4) even assuming arguendo that the fourth witness's testimony should have been included, appellants failed to demonstrate prejudice arising from the alleged error when the jury awarded more money than the value given by this witness.

2. **Trials— motion for new trial—abuse of discretion standard**

    The trial court did not abuse its discretion in an eminent domain case by awarding appellants $680,000 plus interest for their property and by denying their motion for a new trial.

    Appeal by defendants-appellants from judgment and order entered 19 May 2004 by Judge Beverly T. Beal in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 April 2005.

**CITY OF CHARLOTTE v. ERTEL**

[170 N.C. App. 346 (2005)]

*Christa C. Pratt and John P. Barringer for plaintiff-appellee.*

*Thomas D. Windsor for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Thomas Ertel ("Mr. Ertel") and Candice Ertel ("Ms. Ertel") (collectively, "appellants") were awarded $680,000.00 plus interest for the taking by eminent domain of their 7.18 acre tract of property and improvements in Mecklenburg County. Following the jury's verdict, appellants filed a motion for a new trial. On 19 May 2004, the trial court entered judgment and denied appellants' motion. For the reasons discussed herein, we affirm the judgment and order of the trial court.

The facts and procedural history pertinent to the instant appeal are as follows: In 2002, appellants were the owners of 7.18 acres of property situated in Mecklenburg County, North Carolina. On 18 April 2002, the City of Charlotte ("City") filed a declaration of taking regarding the property, whereby City exercised its eminent domain power to take and condemn the property in order to expand Charlotte-Douglas International Airport. City estimated the value of the property and its improvements, and, as full compensation for the taking, City deposited the sum of $650,000.00 with the Mecklenburg County Superior Court. On 17 May 2002, appellants filed an answer and demanded a jury trial on the issue of compensation, contending that the fair market value of the property exceeded the sum estimated and offered by City.

The case proceeded to trial the week of 12 January 2004. Prior to trial, City moved the trial court to prevent appellants from offering testimony regarding the fair market value of the property from witnesses who based their opinion on the fair market value of other condemned property in the area. The trial court reserved its ruling on the issue until it had an opportunity to determine the admissibility of each witness's testimony. At trial, City offered testimony regarding the fair market value of the property from four witnesses: three expert witnesses in the area of real estate and one lay witness. Appellants offered testimony regarding the fair market value of the property from five witnesses: three expert witnesses in the area of real estate, one lay witness, and Mr. Ertel. The trial court prevented appellants from offering testimony from the following four lay witnesses: Paul Norman ("Norman"), William Thorne ("Thorne"), Leonard Horne, Jr. ("Horne"), and Wade Goines ("Goines").

The only issue submitted to the jury was the fair market value of appellants' property. On 15 January 2004, the jury returned a verdict establishing the fair market value of the property at $680,000.00. The trial court thereafter entered judgment in favor of appellants and denied appellants' motion for a new trial. On 7 June 2004, appellants filed notice of appeal with this Court.

The issues on appeal are whether the trial court erred by: (I) excluding the testimony of Norman, Thorne, Horne, and Goines; and (II) denying appellants' motion for new trial.

[1] Appellants first argue that the trial court erred by excluding the testimony of Norman, Thorne, Horne, and Goines. Appellants assert that the witnesses should have been allowed to testify because of their familiarity with the property. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 701 (2003) provides as follows:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C. Gen. Stat. § 8C-1, Rule 403 (2003) provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair preju- dice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"[T]he balance struck by the trial court [regarding the admissibility of evidence] will not be disturbed on appeal absent a clear showing the court abused its discretion by admitting, or excluding, the contested evidence. A trial court abuses its discretion when its decision 'lack[s] any basis in reason.' " *Warren v. Jackson*, 125 N.C. App. 96, 99, 479 S.E.2d 278, 280 (1997) (quoting *Judkins v. Judkins*, 113 N.C. App. 734, 740, 441 S.E.2d 139, 142, *disc. review denied*, 336 N.C. 781, 447 S.E.2d 424 (1994)) (internal citations omitted).

In the instant case, during *voir dire* direct examination, Norman provided his opinion regarding the fair market value of appellants' property and explained that he was basing his opinion on previous sales of properties located in the area. On cross-examination,

CITY OF CHARLOTTE v. ERTEL

[170 N.C. App. 346 (2005)]

Norman testified that some of these properties had been sold for the airport expansion project and under the threat of condemnation. Norman further testified that he had recently sold property of his own under threat of condemnation. On redirect examination, Norman testified that he had other personal experience in property sales, but that those sales had occurred between eight and fifteen years ago. The trial court thereafter excluded Norman from testifying during the trial, concluding that Norman's familiarity with appellants' property was limited, that his "experience with sales of other property himself other than his involving the airport authority is remote in time . . . [,]" and that "[t]he danger exists . . . of [Norman] drawing upon his experience in regard to the existence of the Airport Authority's expansion in regard to forming an opinion." The trial court thus determined that the probative value of Norman's testimony was "outweighed by the confusion of the issues and the prejudicial effect because evidence about sales to the condemning party would not be admissible." Appellants contend that the trial court should have allowed Norman to testify because he was familiar with appellants' property and any improper basis for his valuation of the property was a credibility issue to be explored by City on cross-examination. We disagree.

In *State v. Johnson*, 282 N.C. 1, 191 S.E.2d 641 (1972), our Supreme Court examined the admissibility of evidence regarding prior condemnation sales in a later condemnation proceeding. In *Johnson*, after the State declared its intent to condemn over 268 acres of property owned by the respondents, the trial court held a hearing to determine the fair market value of the respondents' property. During the hearing, the trial court allowed the respondents to introduce evidence of the purchase price of three similarly-situated parcels of property also acquired by the State through condemnation. On appeal, our Supreme Court held that it was prejudicial error for the trial court to allow such evidence into the record. *Id.* at 23, 191 S.E.2d at 656. The Court noted as follows:

The majority rule is "that evidence as to the price paid by the same or another condemning agency for other real property which, although subject to condemnation, was sold by the owner without the intervention of eminent domain proceedings, is rendered inadmissible to prove the value of the real property involved merely because the property was sold to a prospective condemnor." The rationale is that a sale to a prospective condemnor is in effect a forced sale; that at best it represents a compromise and consequently furnishes no true indication of the

price at which the property could be sold in the open market to a "willing buyer"; that the condemnor may pay more in order to avoid the expense and uncertainty of the condemnation proceeding, while the seller may accept less in order to avoid the same or similar burdens. This reasoning also applies to amounts paid by a condemnor for neighboring land taken for the same project—however similar the lands may be—whether the payment was made as the result of a voluntary settlement, an award, or the verdict of a jury.

In some jurisdictions it is held that evidence of a sale otherwise competent is not necessarily inadmissible because the purchaser had the power of eminent domain. However, the burden is upon the party who offers such evidence to establish as a preliminary fact not only that the respective properties are comparable but also that the purchase was not so influenced by compromise or compulsion as to influence the price and therefore to destroy its usefulness as a standard of value. . . . [I]t is said that the burden of establishing the admissibility of evidence as to the price paid by a condemnor for other similar property "is a heavy one."

. . . .

It is our opinion that any sale to a prospective condemnor is highly unlikely to be a fair test of market value, and that a preliminary determination by the trial judge that the sale was not tainted by compulsion or compromise cannot establish it as a reliable standard. As the Court of Appeals of Kentucky said . . ., "We think that such an inquiry into matters of motivation ventures too far into the realm of speculation and is not a satisfactory substitute for the rule of no admissibility. We therefore adhere to the latter rule."

*Id.* at 22-23, 191 S.E.2d at 655-56 (citations omitted).

In the instant case, Norman's *voir dire* testimony tended to show that his opinion was based upon prior condemnation proceedings involving either his own property or other properties in the area. Those non-condemnation property transfers of which Norman was aware or involved in occurred more than eight years prior to appellants' condemnation proceedings, a time period the trial court found too remote to establish relevancy. Thus, were Norman to testify, the probative value of the evidence he offered regarding the fair market value of appellants' land would be based upon prior condemnation sales which, in light of *Johnson*, are an improper basis for valuing

property in a current condemnation proceeding. *See also Light Co. v. Sloan*, 227 N.C. 151, 154, 41 S.E.2d 361, 364 (1947) ("The market value of property is the price it will bring when it is offered by one who desires, but is not compelled to sell it, and is purchased by one who is under no necessity to buy it."). Furthermore, because our Supreme Court has noted that "[c]ross-examination as to prices paid by [a] condemnor for other tracts for the same project is improper[,]" *Barnes v. Highway Commission*, 250 N.C. 378, 395, 109 S.E.2d 219, 233 (1959), we are not persuaded by appellants' contention that the propriety of the basis of Norman's testimony goes to its credibility rather than its admissibility. Therefore, in light of the foregoing, we conclude that the trial court did not abuse its discretion by excluding Norman's opinion regarding the fair market value of appellants' property.

We note that the trial court similarly excluded Thorne from testifying at trial after concluding "that his testimony would have to be intertwined with the condemnation overshadowing the process[,]" and that "it would be fundamentally difficult for him to testify without something being said about the airport condemnation and the cross-examination would be so limited . . . ." During *voir dire* direct examination, Thorne testified that he believed appellants' property was worth $100,000.00 an acre, and he explained that he reached this conclusion after examining seven "comparable properties" during a transfer of his own property in 2002. However, Thorne also testified he "talked to people at other airports that owned property that was going through this process[,]" and that he "tried to sell [his] property [but] couldn't because everybody knew that it was going to be taken so [he] couldn't sell it." During cross-examination, Thorne testified that although he "started considering the value of [his] land when [he] bought it[,]" the 2002 appraisal of his own property was in response to condemnation proceedings brought by City in order to obtain property for the airport expansion project. Thorne further testified that he obtained the appraisal because his property was under the threat of condemnation, and he had since "settled" his "property situation" with City. In light of the foregoing, we also conclude that the trial court did not abuse its discretion by excluding Thorne's testimony.

With respect to Horne, the trial court found that four years prior to appellants' condemnation trial, Horne was involved in a condemnation sale to the Department of Transportation. The trial court further found that a two acre portion of Horne's property was currently under contract for sale at $700,000.00. Although the trial court noted

that the prior condemnation sale was unrelated to the airport expansion project and that Horne's two acre portion of property was not being sold under threat of condemnation, the trial court nevertheless prohibited Horne from testifying at trial, concluding that appellants had failed to provide a proper foundation "to show the similarity in the nature, location, and condition of the . . . other properties with which [] Horne is familiar to the land involved." We conclude that the trial court did not err.

"It is the rule in this State that the price paid at voluntary sales of land, similar in nature, location, and condition to the condemnee's land, is admissible as independent evidence of the value of the land taken if the prior sale was not too remote in time." *Johnson*, 282 N.C. at 21, 191 S.E.2d at 655. However, "the land must be similar to the land taken, else the evidence is not admissible on direct examination. . . . Only such parcels may be compared where the dissimilarities are reduced to a minimum and allowance is made for such dissimilarities." *Barnes*, 250 N.C. at 394, 109 S.E.2d at 231.

> Whether property involved in a voluntary sale is sufficiently similar in nature, location and condition to the property appropriated by condemnation to admit evidence of its sale and the price paid therefor as a guide to the value of the condemned property is a question to be determined by the trial judge in the exercise of his sound discretion.

*Highway Commission v. Coggins*, 262 N.C. 25, 28, 136 S.E.2d 265, 267 (1964).

In the instant case, during *voir dire* direct examination, Horne testified that he had knowledge of the value of appellants' property and that appellants were entitled to "between eighty and a hundred thousand an acre for property like that." However, on cross-examination, Horne was unable to locate his own property on a map of the airport expansion area, and he admitted that his property was "off the map" of the airport expansion area. Horne further testified that he had not sold property on or near the road upon which appellants' property was located. Although Horne testified that he was basing his opinion regarding the fair market value of the property upon "what all the property in the neighborhood is bringing[,]" Horne further testified that his neighbors' property was also "at the same location" his property was located—"just off the map." When asked whether he knew of any property located on the same road and in the same area as appellants' that had sold for $80,000.00 to $100,000.00 an

acre, "in a private sale not under threat of condemnation[,]" Horne replied, "No, ma'am; I do not." In light of the foregoing, we conclude that the trial court did not abuse its discretion by excluding Horne's testimony because of the dissimilarities between the property he based his opinion upon and appellants' property.

With respect to Goines, although the trial court noted that Goines was familiar with appellants' property as well as other property values, the trial court nevertheless concluded that Goines' familiarity with the property values was insufficient "to provide competent evidence in regard to the opinion on this particular property." Appellants contend that Goines was "the best qualified of any witness offered" because of his "extensive business dealings" in real estate matters. However, we note that Goines concluded that appellants' property "would be worth seventy to eighty thousand dollars an acre[,]" a value significantly *less* than the approximately $95,000.00 an acre ultimately awarded by the jury. Therefore, assuming *arguendo* that the trial court erred in excluding Goines' testimony, we nevertheless conclude that appellants have failed to demonstrate prejudice arising from the alleged error.

In light of the foregoing conclusions, we hold that the trial court did not err in excluding the testimony of Norman, Thorne, Horne, and Goines. Accordingly, appellants' first argument is overruled.

[2] Appellants next argue that the trial court erred by denying their motion for a new trial. In support of this argument, appellants reassert their contentions regarding the exclusion of testimony from Norman, Thorne, Horne, and Goines.

"A trial judge's discretionary order made pursuant to Rule 59 for or against a new trial may be reversed only when an abuse of discretion is clearly shown." *Hanna v. Brady*, 73 N.C. App. 521, 525, 327 S.E.2d 22, 24, *disc. review denied*, 313 N.C. 600, 332 S.E.2d 179 (1985). "[A]n appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum and Cogdell v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). "During review, we accord 'great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the necessity for new trial.' " *Burgess v. Vestal*, 99 N.C. App. 545, 550, 393 S.E.2d 324, 327 (quoting *Bynum*, 305 N.C. at 487, 290 S.E.2d

at 605), *disc. review denied,* 327 N.C. 632, 399 S.E.2d 324 (1990). In the instant case, we have reviewed the record and we conclude that the trial court did not abuse its discretion by denying appellants' motion for a new trial. Accordingly, appellants' final argument is overruled.

In light of the foregoing conclusions, we affirm the trial court judgment awarding appellants $680,000.00 for their property and the trial court order denying appellants' motion for new trial.

Affirmed.

Judges CALABRIA and GEER concur.