REGINALD DUDLEY JACKSON, Plaintiff v. CHANCE MITCHELL CARLAND,
Individually, and CARLAND FORD TRACTOR, INC., Defendants

No. COA07-1122

(Filed 2 September 2008)

## 1. Evidence— relevancy—testimony—conduct at time of accident—agency

The trial court did not abuse its discretion in a negligence case arising out of an automobile accident by permitting witnesses to testify regarding defendant individual's conduct in fleeing the scene after the accident because: (1) although the record indicated defendants stipulated to negligence and permissive use, defendants' stipulation was equivocal as to whether defendant individual was acting as an agent of defendant company at the time of the accident; (2) the fact that an individual operated a vehicle with the owner's knowledge, consent, or authorization is not determinative as to the owner's liability, and plaintiff still bore the burden of proving defendant individual was the agent of defendant company; (3) the testimony regarding defendant individual fleeing the scene was relevant to show his motivation for leaving the scene as it related to the possibility that he was acting as an agent for the company; (4) even assuming arguendo that the admission of this testimony was error, defendants failed to meet their burden of showing how the trial result would have been different had the trial court not admitted this evidence; (5) even though defendants contend the testimony was inadmissible under N.C.G.S. § 8C-1, Rule 608, that rule governs reference to specific instances of conduct only on cross-examination regarding the credibility of any witness and prohibits proof by extrinsic evidence; and (6) N.C.G.S. § 8C-1, Rule 404(b) provides that evidence regarding extrinsic acts is not limited to cross-examination and may be proved by extrinsic evidence as well as through cross-examination.

## 2. Evidence— automobile accident—diminished earning capacity

The trial court did not abuse its discretion in a negligence case arising out of an automobile accident by permitting plaintiff's employer to testify concerning plaintiff's diminished earning capacity given his limitations and the amount he would receive from other employers in the area given these limitations because:

(1) in personal injury actions, great latitude is allowed in the introduction of evidence to aid in determining the extent of the damages; (2) as a general rule, any evidence which tends to establish the nature, character and extent of injuries which are the natural and proximate consequences of the tortfeasor's acts is admissible in such actions, if otherwise competent; (3) our courts have acknowledged that some degree of speculation is inherent in the determination of compensation for lost earning capacity claims; (4) objections to evidence of lost earning capacity on the ground that such evidence is speculative go to the weight of the evidence rather than its admissibility; (5) defendant failed to show the trial court's decision lacked a basis in reason; and (6) although the employer's estimate of plaintiff's earning capacity involved some speculation, his testimony related directly to the question of damages which was a fact at issue in the case.

3. **Negligence— automobile accident—instruction—lost income—earning capacity**

The trial court did not err in a negligence case arising out of an automobile accident by instructing the jury that it could award damages for plaintiff's future lost income and earning capacity where the evidence allegedly failed to support the instruction because: (1) the testimony from plaintiff's employer concerning plaintiff's job limitations and the amount he would receive from other employers in the area given these limitations went to the question of damages; (2) evidence of a plaintiff's earning capacity is often speculative, and the ultimate question of damages is one for the jury; and (3) the trial court was presented with sufficient evidence to support a jury instruction regarding plaintiff's future lost income and earning capacity.

4. **Automobiles— improper instruction—family purpose doctrine—new trial**

The trial court erred in a negligence case arising out of an automobile accident by incorrectly instructing the jury regarding the family purpose doctrine, and defendant is entitled to a new trial because: (1) plaintiff sought to recover damages from defendant based on the doctrine of respondeat superior; (2) although our Supreme Court has noted that the family purpose doctrine is, in essence, a means of establishing liability under a theory of respondeat superior, our courts have not expanded this doctrine to encompass company-owned vehicles; (3) even in

jurisdictions that have extended the family purpose doctrine to cover company-owned vehicles, the courts commonly focus on whether the vehicle in question was provided for the general use of the family; (4) the trial court provided an altered version of the family purpose doctrine which extended the doctrine to cover company-owned vehicles and removed the requirement that the vehicle be provided for family use, thus failing to align with either traditional notions of liability under the doctrine of respondeat superior or the exceptional liability provided under the family purpose doctrine; and (5) the instruction constituted a misstatement of the law and likely misled the jury in its determination of defendant's liability.

**5. Trials— motion for new trial—erroneous instruction—substantial miscarriage of justice**

The trial court erred in a negligence case arising out of an automobile accident by denying defendant employer's motion for a new trial on the ground that improper evidence was admitted at trial and that the trial court provided erroneous instructions to the jury because: (1) although defendants' contentions concerning the testimony of the witnesses was found to be without merit, the trial court did err in its instruction to the jury regarding the family purpose doctrine which likely misled the jury; and (2) the failure to grant a new trial constituted a substantial miscarriage of justice.

Appeal by defendants from judgment entered 27 April 2007 by Judge James U. Downs in Henderson County Superior Court. Heard in the Court of Appeals 20 February 2008.

*Pulley, Watson, King & Lischer, P.A., by Richard N. Watson, for plaintiff appellee.*

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Michelle Rippon, for Carland Ford Tractor defendant appellant.*

*Young, Morphis, Bach & Taylor, L.L.P., by Paul E. Culpepper, for Chance Mitchell Carland defendant appellant.*

McCULLOUGH, Judge.

Defendants appeal from a jury verdict awarding plaintiff $275,000 in damages. We remand for a new trial.

**JACKSON v. CARLAND**

[192 N.C. App. 432 (2008)]

## FACTS

On 26 August 2003, Reginald Jackson ("plaintiff") and Chance Carland ("Chance"), an employee of Carland Ford Tractor, Inc. ("Carland Ford Tractor"), were involved in an automobile collision. In addition to being an employee of Carland Ford Tractor, Chance was also the son of the company's owner, Tony Carland. Chance was driving a company truck at the time he struck plaintiff's vehicle.

After colliding with the rear of plaintiff's truck, Chance left the scene of the accident and drove to an abandoned restaurant nearby. He was followed by Harry Roberts, who observed the accident and reported it to the State Highway Patrol. Shortly after receiving this report, Trooper Chris Goodson arrived at the restaurant to determine if the truck parked near the restaurant was the vehicle that had been involved in the earlier collision. When he arrived, Trooper Goodson found Chance circling the truck, trying to determine the extent of the damage. Trooper Goodson testified that had he not received the tip from Mr. Roberts regarding the vehicle's location, he would not have been able to locate it.

On 28 November 2005, plaintiff filed a complaint against Chance Carland and Carland Ford Tractor, Inc. ("defendants"), alleging that Chance's negligence was the proximate cause of the 26 August 2003 accident, and that Carland Ford Tractor was liable for Chance's negligence under the doctrine of *respondeat superior*. Thus, plaintiff sought to recover damages for, *inter alia*, his medical expenses, loss of earnings, decreased earning capacity, mental and/or emotional distress, disability, and pain and suffering.

On 12 April 2007, plaintiff's action was heard before a jury in Henderson County Superior Court. As an initial matter, defendants stipulated (1) that Chance Carland had negligently caused the accident, and (2) that Chance Carland had permission to use the truck owned by Carland Ford Tractor. Following defendants' stipulations, plaintiff put forward evidence to support his remaining claims. According to plaintiff, the collision with Chance's truck caused his head to strike the top of his pickup cab and his body to then hit the back of his seat. Dr. Jonathan Sherman testified that as a result of these injuries, plaintiff began to experience neck pain and was diagnosed with cervical extension syndrome, which he referred to as a "whiplash injury." Although he received several medications, this pain persisted. Plaintiff was later diagnosed with a herniated disc, which, according to testimony provided by Dr. Sherman,

was directly correlated to the injuries he sustained from the 26 August 2003 accident.

Plaintiff also presented testimony from several other witnesses. Among these witnesses were Trooper Goodson and Mr. Roberts, who testified about Chance Carland's actions following the accident. Additional testimony, provided by plaintiff's employer, Bradley Snider, indicated that plaintiff's ability to perform his job had been limited since the accident occurred.

On 27 April 2007, the jury found Chance Carland had operated the truck owned by Carland Ford Tractor with the express or implied permission of the owner and determined that plaintiff was entitled to $275,000 in damages as a result of the 26 August 2003 accident. Defendants now appeal.

I.

[1] Defendants first argue the trial court erred in permitting witnesses to testify regarding defendant Chance Carland's conduct at the time of the accident. According to defendants, this evidence lacked relevancy, was highly prejudicial, and was inadmissible under Rule 608 of the North Carolina Rules of Evidence. We disagree.

"Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (citation omitted); N.C. Gen. Stat. § 8C-1, Rule 401 (2007). On appeal, the trial court's rulings on relevancy are given great deference. *Dunn*, 162 N.C. App. at 266, 591 S.E.2d at 17. "Moreover, even if the testimony admitted were irrelevant, a new trial would not be granted unless the objecting party was prejudiced thereby." *Ferrell v. Frye*, 108 N.C. App. 521, 526, 424 S.E.2d 197, 200, *disc. review denied*, 333 N.C. 537, 429 S.E.2d 557 (1993). For the judgment to be set aside, the defendant must show "that a different result would have ensued in the absence of the evidence." *Id.*

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2007). "The exclusion of evidence under Rule 403 is a matter generally left to the sound discretion of the trial court." *State v. Alston*, 341 N.C. 198, 237, 461

JACKSON v. CARLAND

[192 N.C. App. 432 (2008)]

S.E.2d 687, 708 (1995), *cert. denied,* 516 U.S. 1148, 134 L. Ed. 2d 100 (1996). The trial court's decision in this matter "will only be reversed upon a showing that the trial court's ruling was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision." *State v. Womble,* 343 N.C. 667, 690, 473 S.E.2d 291, 304 (1996), *cert. denied,* 519 U.S. 1095, 136 L. Ed. 2d 719, *reh'g denied,* 520 U.S. 1111, 137 L. Ed. 2d 322 (1997).

Here, defendants argue that the testimony provided by Trooper Goodson and Mr. Roberts, regarding Chance Carland's behavior after the accident, was irrelevant, unfairly prejudicial, and inadmissible under Rule 608 of the North Carolina Rules of Evidence. Defendants contend that because they stipulated (1) that Chance Carland was negligent and (2) that Chance Carland had permission to use the truck, the only issue before the court was the proper amount of damages. As evidence of Chance Carland's behavior at the time of the accident bears no relevance as to plaintiff's damages, defendants argue, this testimony was admitted in error and caused defendants to be prejudiced.

On review, we are unpersuaded by defendants' contentions. Although the record indicates defendants stipulated to negligence and permissive use, defendants' stipulation was equivocal as to whether Chance Carland was acting as an agent of Carland Ford Tractor at the time of the accident. As our Supreme Court has previously noted, the fact that an individual operated a vehicle with the owner's knowledge, consent, or authorization is not determinative as to the owner's liability. *See Passmore v. Smith,* 266 N.C. 717, 719, 147 S.E.2d 238, 241 (1966). Under the doctrine of *respondeat superior,* the owner is liable for the other individual's negligence "only upon allegation and proof" that the individual was an agent of the owner and "that this relationship existed at the time and in respect of the very transaction out of which the injury arose." *Id.* (citation omitted). Thus, in the instant case, plaintiff still bore the burden of proving Chance Carland was the agent of Carland Ford Tractor. If Chance were acting as an agent of Carland Ford Tractor, it is possible that he desired to conceal this agency by running away from the scene. Therefore, the testimony of Trooper Goodson and Mr. Roberts regarding Chance's actions in fleeing the scene was relevant to show Chance's motivation for leaving the scene as it related to the possibility that he was acting as an agent for Carland Ford Tractor. Even assuming *arguendo* that the admission of this testimony was error, defendants have failed to meet their burden of showing how the trial

result would have differed had the trial court not admitted this evidence. Therefore, we hold the aforementioned testimony was relevant and the trial court did not abuse its discretion by allowing this testimony to be admitted at trial.

Defendants further argue that this testimony, which concerned prior acts of misconduct by Chance Carland, was inadmissible under Rule 608 of the North Carolina Rules of Evidence. Rule 608 of our Rules of Evidence provides:

> *Specific instances of conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

N.C. Gen. Stat. § 8C-1, Rule 608(b) (2007). According to defendant, the introduction of testimony concerning Chance Carland's actions was meant to disparage his credibility. Because Chance did not testify, defendants argue, the issue of his credibility was not before the trial court and such testimony was inadmissible.

On review, we find defendants' contention to be without merit. "Rule 608(b) governs reference to specific instances of conduct only on cross-examination regarding the credibility of any witness and prohibits proof by extrinsic evidence." *State v. Morgan*, 315 N.C. 626, 636-37, 340 S.E.2d 84, 91 (1986). However, under Rule 404(b), "evidence regarding extrinsic acts is not limited to cross-examination and *may* be proved by extrinsic evidence as well as through cross-examination." *Id.* at 637, 340 S.E.2d at 91; *see Commentary*, N.C. Gen. Stat. § 8C-1, Rule 608. Rule 404(b) "allows the use of extrinsic conduct evidence so long as the evidence is relevant for some purpose *other than* to show that defendant has the propensity for the type of conduct for which he is being tried." *Morgan*, 315 N.C. at 637, 340 S.E.2d at 91. As we have previously discussed, the aforementioned testimony was relevant to show Chance's motivation in leaving the scene of the accident. Therefore, we find defendants' assignments of error to be without merit.

II.

**[2]** Defendants next argue the trial court erred in permitting plaintiff's employer, Bradley Snider, to testify concerning plaintiff's diminished earning capacity. We disagree.

"In personal injury actions great latitude is allowed in the introduction of evidence to aid in determining the extent of the damages[.]" *Smith v. Corsat*, 260 N.C. 92, 96, 131 S.E.2d 894, 897 (1963). As a general rule, "any evidence which tends to establish the nature, character and extent of injuries which are the natural and proximate consequences of the tortfeasor's acts is admissible in such actions, if otherwise competent." *Id.* The trial court's determination regarding the admissibility of evidence " 'will not be disturbed on appeal absent a clear showing the court abused its discretion by admitting, or excluding, the contested evidence. A trial court abuses its discretion when its decision lacks any basis in reason.' " *City of Charlotte v. Ertel*, 170 N.C. App. 346, 348, 612 S.E.2d 438, 441 (2005) (citations omitted).

Here, plaintiff proffered testimony from Mr. Snider, a contractor and developer in Buncombe, Henderson, and Rutherford Counties, regarding plaintiff's employment as a working superintendent. According to Mr. Snider, after being involved in the accident with Chance Carland, plaintiff was no longer able to fulfill all the duties associated with his position. Therefore, Mr. Snider had assigned plaintiff to "light duty" work. Despite plaintiff's limited ability to perform his job, Mr. Snider did not lower his pay because of his "loyalty" to plaintiff. However, Mr. Snider further testified that due to his limitations, plaintiff would probably receive twenty to thirty percent less than his current wages if he left employment with Mr. Snider and sought work elsewhere in the area. According to defendants, this testimony concerning plaintiff's limitations should not have been allowed because (1) plaintiff laid an insufficient foundation for such testimony, (2) the testimony was speculative, and (3) the testimony was highly prejudicial.

As our Supreme Court has noted, in personal injury actions

*the jury should estimate the damages on the injured party's ability to earn money rather than what he actually received,* and the amount which plaintiff is capable of earning, and not that which he has actually earned since the injury, is to be taken for

the purpose of comparison with his previous earnings as show-
ing the diminution of earning capacity.

*Owens v. Kelly*, 240 N.C. 770, 773, 84 S.E.2d 163, 166 (1954) (empha-
sis added). Further, our courts have acknowledged that "some degree
of speculation is inherent in the determination of compensation for
lost earning capacity claims." *Curry v. Baker*, 130 N.C. App. 182, 193,
502 S.E.2d 667, 676, *disc. review denied*, 349 N.C. 355, 517 S.E.2d 890
(1998). Therefore, objections to evidence of lost earning capacity on
the grounds that such evidence is speculative go to the weight of the
evidence rather than its admissibility. *Curry*, 130 N.C. App. at 194,
502 S.E.2d at 676 (analogizing personal injury claims to wrongful
death claims, where our Supreme Court has held:

> The present monetary value of the decedent to the persons
> entitled to receive the damages recovered will usually defy any
> precise mathematical computation. Therefore, the assessment of
> damages must, to a large extent, be left to the good sense and fair
> judgment of the jury—subject, of course, to the discretionary
> power of the judge to set its verdict aside when, in his opinion,
> equity and justice so require. The fact that the full extent of the
> damages must be a matter of some speculation is no ground for
> refusing all damages.

*Brown v. Moore*, 286 N.C. 664, 673, 213 S.E.2d 342, 348-49 (1975)
(citations omitted)).

On review, we hold defendant has failed to show the trial court's
decision lacked a basis in reason. Our Rules of Evidence provide:

> If [a] witness is not testifying as an expert, his testimony in
> the form of opinions or inferences is limited to those opinions or
> inferences which are (a) rationally based on the perception of the
> witness and (b) helpful to a clear understanding of his testimony
> or the determination of a fact in issue.

N.C. Gen. Stat. § 8C-1, Rule 701 (2007). In the case at bar, Mr. Snider,
a local contractor, testified that he had worked with plaintiff, both
before and after his injury. Thus, Mr. Snider was familiar with the
duties associated with plaintiff's position, as well as plaintiff's cur-
rent limitations with respect to the fulfillment of these duties. Based
on this knowledge, Mr. Snider delivered opinions as to plaintiff's abil-
ity to perform his job and his earning capacity. Although Mr. Snider's
estimate of plaintiff's earning capacity involved some speculation, his
testimony related directly to the question of damages, a fact at issue

in the case. Therefore, we hold the trial court did not abuse its discretion in allowing Mr. Snider's testimony.

## III.

**[3]** Defendants also argue the trial court erred in instructing the jury that it could award damages for plaintiff's future lost income and earning capacity where the evidence failed to support the instruction. We disagree.

"In reviewing the trial court's decision to give or not give a jury instruction, the preliminary inquiry is whether, in the light most favorable to the proponent, the evidence presented is sufficient to support a reasonable inference of the elements of the claim asserted." *Blum v. Worley*, 121 N.C. App. 166, 168, 465 S.E.2d 16, 18 (1995). Should the trial court choose to charge the jury with regard to the claim, the court will consider the charge "contextually and in its entirety." *Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002). "The charge will be held to be sufficient if 'it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.]' " *Hughes v. Webster*, 175 N.C. App. 726, 730, 625 S.E.2d 177, 180-81 (quoting *Jones v. Development Co.*, 16 N.C. App. 80, 86-87, 191 S.E.2d 435, 440, *cert. denied*, 282 N.C. 304, 192 S.E.2d 194 (1972)), *disc. review denied*, 360 N.C. 533, 633 S.E.2d 816 (2006).

Here, the trial court was presented with testimony from plaintiff's employer, Mr. Snider, concerning plaintiff's job limitations and the amount he would receive from other employers in the area given these limitations. As we have previously discussed, this testimony went to the question of damages, and the trial court did not abuse its discretion by admitting this evidence. In addition, we have noted that evidence of a plaintiff's earning capacity is often speculative, and that the ultimate question of damages is one for the jury. *See Owens*, 240 N.C. at 773, 84 S.E.2d 166. After reviewing the record, we hold that the trial court was presented with sufficient evidence to support a jury instruction regarding plaintiff's future lost income and earning capacity. We further hold that this instruction presents no reasonable cause to believe the jury would be misinformed as to the applicable law. Therefore, defendants' assignment of error is overruled.

## IV.

**[4]** Defendants additionally argue the trial court erred in instructing the jury. Specifically, defendant argues the trial court provided

an incorrect instruction regarding the family-purpose doctrine. We agree.

A jury instruction will be held to be sufficient if " 'it presents the law of the case in such [a] manner as to leave no reasonable cause to believe the jury was misled or misinformed[.]' " *Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002) (citation omitted). Where a party has assigned error to a jury instruction, that party

> bears the burden of showing that the jury was misled or that the verdict was affected by [the] instruction. "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury."

*Id.* (citations omitted). On review, the charge to the jury will be viewed as a whole. *State v. Glynn*, 178 N.C. App. 689, 693, 632 S.E.2d 551, 554, *appeal dismissed, disc. review denied*, 360 N.C. 651, 637 S.E.2d 180 (2006). If an isolated portion of the charge is erroneous, but the charge as a whole is correct, the incorrect portion will not be held prejudicial. *Id.*

"At best the family purpose doctrine is an anomaly in the law." *Smith v. Simpson*, 260 N.C. 601, 612, 133 S.E.2d 474, 483 (1963). "Under [this] doctrine, the owner or person with ultimate control over a vehicle is held liable for the negligent operation of that vehicle by a member of his household." *Byrne v. Bordeaux*, 85 N.C. App. 262, 264, 354 S.E.2d 277, 279 (1987). "[It] is essentially a means for establishing liability of responsible parties on a theory of *respondeat superior* whereby the responsible party is the principal and the party actively negligent is agent." *Carver v. Carver*, 310 N.C. 669, 680, 314 S.E.2d 739, 746 (1984). For a plaintiff to recover under this doctrine, he must show:

> "(1) [T]he operator was a member of the family or household of the owner or person with control and was living in such person's home; (2) that the vehicle was owned, provided and maintained for the general use, pleasure and convenience of the family; and (3) that the vehicle was being so used with the express or implied consent of the owner or person in control at the time of the accident."

*Loy v. Martin*, 156 N.C. App. 622, 627, 577 S.E.2d 407, 410, *disc. review denied*, 357 N.C. 251, 582 S.E.2d 274 (2003).

In the case *sub judice*, the trial court noted that the circumstances of the case were "first cousin" to those that would give rise to an instruction regarding the family-purpose doctrine. However, the trial court noted that it was not a family-purpose case and provided an altered version of the doctrine over the objection of defense counsel. In his charge to the jury, the trial court informed the jury that in order to find for plaintiff, he must prove by a greater weight of the evidence that: (1) Chance Carland was operating the truck owned by Carland Ford Tractor with the company's permission at the time of the accident; (2) Carland Ford Tractor provided the vehicle for the use, convenience, or pleasure of Chance Carland while he was employed by the company; and (3) at the time of the accident, Chance Carland was driving the vehicle with the knowledge, approval, and consent of the company. The trial court further informed the jury that it was "not necessary that [Chance Carland's] use had been for some purpose directly benefitting the defendant— the defendant company."

On review, we find the trial court's instruction regarding the family-purpose doctrine was misleading and represented an incorrect statement of the law. As we have previously noted, plaintiff sought to recover damages from defendant based on the doctrine of *respondeat superior*. Under this doctrine, for plaintiff to recover he must show, *inter alia*, that Chance Carland was an agent of Carland Ford Tractor and that he was acting within the scope of his agency at the time of the accident. *See Passmore*, 266 N.C. at 719, 147 S.E.2d at 241. Although our Supreme Court has noted that the family-purpose doctrine is, in essence, a means of establishing liability under a theory of *respondeat superior*, our courts have not expanded this doctrine to encompass company-owned vehicles. *See Carver*, 310 N.C. 680, 314 S.E.2d 746. Further, even in jurisdictions that have extended the family-purpose doctrine to cover company-owned vehicles, the courts commonly focus on whether the vehicle in question was provided for the general use of the family. *See Temple v. Chastain*, 109 S.E.2d 897, 899 (Ga. Ct. App. 1959); *Durso v. A. D. Cozzolino, Inc.*, 20 A.2d 392, 394 (Conn. 1941); *Hexter v. Burgess*, 184 S.E. 769, 773 (Ga. Ct. App. 1936). Here, the trial court provided an altered version of the family-purpose doctrine which (1) extended the doctrine to cover company—owned vehicles, and (2) removed the requirement that the vehicle be provided for family use. Thus, the trial court's instruction did not align with either our traditional notions of liability under the doctrine of *respondeat superior* or the exceptional liability provided

under the family-purpose doctrine. *See Passmore*, 266 N.C. at 719, 147 S.E.2d at 241; *Loy*, 156 N.C. App. at 626-27, 577 S.E.2d at 410. Therefore, we hold the trial court's instruction constituted a misstatement of the law and likely misled the jury in its determination of defendants' liability. As such, we award defendants a new trial.

V.

**[5]** Defendants lastly argue the trial court erred in denying Carland Tractor's motion for a new trial. We agree.

"Generally, a motion for new trial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a manifest abuse of that discretion." *Kinsey v. Spann*, 139 N.C. App. 370, 372, 533 S.E.2d 487, 490 (2000). "However, where the motion involves a question of law or legal inference, our standard of review is *de novo*." *Id.*

Here, defendants made a motion to the trial court for a new trial on the grounds that improper evidence was admitted at trial and that the trial court provided erroneous instructions to the jury. On appeal, defendant's argue the trial court erred in denying this motion. In support of this argument, defendants reassert their previous arguments with respect to (1) the testimony of Trooper Goodson and Mr. Roberts; (2) the testimony of Mr. Snider, plaintiff's employer; and (3) the trial court's instruction regarding the family-purpose doctrine. Although we have found defendants' contentions concerning the testimony of the witnesses to be without merit, we hold the trial court erred in its instruction of the jury. As we have previously discussed, the trial court provided an incorrect instruction regarding the family-purpose doctrine which likely misled the jury. Thus, this instruction was erroneous and the court's failure to grant a new trial constituted a substantial miscarriage of justice. We, therefore, remand for a new trial. *See Edwards v. Hardy*, 126 N.C. App. 69, 73, 483 S.E.2d 724, 727 (1997).

New trial.

Judges ELMORE and ARROWOOD concur.