JOSEPH C. DUNN, Plaintiff v. JEFF STEPHEN CUSTER and CON-WAY TRUCKLOAD SERVICES, INC., Defendants

No. COA02-1672

(Filed 20 January 2004)

### 1. Evidence— employment after accident—not speculative

There was no error in the denial of a new trial on damages from an auto accident based on defendant's contentions that testimony about plaintiff's employment as a dentist was speculative due to a medical condition existing before the accident.

### 2. Evidence— auto accident—injuries of non-party

There was no error in denying a new trial to determine damages from an auto accident based on the admission of testimony about the injuries of another occupant of plaintiff's vehicle. The evidence was admitted for the limited purpose of proving the force of the impact.

### 3. Evidence— extent of injuries and pain—non-expert testimony

The trial court did not err by denying defendant's motion for a new trial to determine damages from an auto accident based on the admission of testimony from another occupant of the vehicle about plaintiff's pain. The witness had known plaintiff for over thirty years, was aware of plaintiff's prior medical condition, was a passenger in the car on the day of the accident, and testified that plaintiff seemed to be in a lot of pain and was probably doing worse than the witness after the accident.

Appeal by defendants from order entered 31 July 2002 by Judge Charles C. Lamm, Jr., in Buncombe County Superior Court. Heard in the Court of Appeals 16 September 2003.

*Adams, Hendon, Carson, Crow & Saenger, P.A., by George Ward Hendon, for plaintiff-appellee.*

*Cogburn, Goosmann, Brazil & Rose, P.A., by Frank J. Contrivo, Jr. and Andrew J. Santaniello, for defendants-appellants.*

LEVINSON, Judge.

Defendants appeal from a jury trial held on the issue of damages, contending that the trial court erred in denying their motion for a new trial. We affirm.

I.

On 28 July 2000, Jeff Custer was driving a tractor-trailer owned by Con-Way Truckload Services, Inc. (defendants). Custer was an employee of Con-Way Truckload Services. Custer failed to reduce his speed in an area of traffic congestion caused by road construction, and he crashed into the rear of a sports-utility vehicle driven by Joseph Dunn (plaintiff). Dr. James Teague was riding as a passenger in plaintiff's vehicle at the time of the collision. Defendants admitted liability, and a jury trial was conducted on the issue of damages alone.

At trial, plaintiff presented evidence tending to show the following: Plaintiff was a licensed dentist who owned and operated his own practice from 1973 to 1997. In 1993 he began experiencing pain that radiated throughout his neck and both arms. Plaintiff sought treatment for his condition, and he was ultimately diagnosed as having multi-level degenerative cervical disk disease. Dr. Keith Maxwell, an orthopedic surgeon and plaintiff's treating physician, testified that "all the years that [plaintiff] performed dentistry, bending and stooping and looking in the mouths at awkward angles either precipitated or accelerated his degenerative disk disease in his neck." Plaintiff sold his private practice due to his worsening condition in 1997.

After taking a year off, plaintiff accepted a position as Director of the Buncombe County Health Department Dental Facility in September 1999, which permitted him to work on a part-time basis. In this position, plaintiff controlled his own hours, decided which patients he would treat, and performed all of the clinic's administrative duties. At the time of the accident, plaintiff was still employed by the health department.

In the summer of 2000, plaintiff was offered a part-time position with his friend, Dr. James Teague, a dentist in private practice. The

position entailed working approximately two days each week to help reduce Dr. Teague's patient load. Plaintiff and Dr. Teague agreed orally that plaintiff would receive thirty-five percent of what he produced and would not be responsible for any salary or overhead expenses. Prior to the accident, plaintiff had worked at Dr. Teague's office approximately 2-3 times. The day before the accident, plaintiff received his first paycheck for services he had rendered while in Dr. Teague's employ.

After the 28 July 2000 accident, plaintiff began experiencing numbness in his hands and could not hold dental instruments or feel the vibrations of instruments. Plaintiff's physician opined the motor vehicle accident exacerbated his condition and recommended that plaintiff cease working completely. Plaintiff resigned from the health department 7 September 2000 and terminated his employment with Dr. Teague.

During the trial, Dr. Teague testified that he was a passenger in plaintiff's vehicle at the time of the accident. Over defendants' objection, the trial court permitted Dr. Teague to testify about the force of the collision and the extent of the injuries he claimed to have suffered as a result of the accident:

Q: What did it do to you at the moment of impact?

A: Of course the seat back snapped, and obviously there was a lot of disorientation there. It took me some time to find my glasses, and I wasn't quite sure what was going on for a moment. I don't think I lost consciousness. I remember looking over the seats. As the backs of the seats snapped, they kind of rolled toward one another. Joe and I were kind of facing each other, and I remember Joe grabbing his neck and yelling, "Oh, my God; oh, my God." I remember trying to sit up and grabbing the steering wheel to try and keep us from getting into [sic] the car in front of us. As soon as I gathered my senses I remember my left leg, my calf being very sore.

[COUNSEL FOR DEFENDANT]: Object to any alleged injuries that this witness may have sustained.

[COUNSEL FOR PLAINTIFF]: It goes to the force of the impact.

COURT: Overruled. Briefly as it may go to the force of the impact.

A: I remember, of course, pain in my neck and abdomen. I remember when I got out of the car I had some numbness in, I think, my right hand. I guess that's the extent of it.

Plaintiff contended, and the trial court ruled, that Dr. Teague's injuries were relevant as to the force of the impact between defendants' tractor-trailer and plaintiff's vehicle.

Dr. Teague also provided a lay opinion, based on his observations, concerning the amount of pain that plaintiff was experiencing:

A: We were relating symptoms to each other and consoling each other in that hopefully we'll get better. I remember him being in a lot of pain. We both were in a lot of pain. I think his pain was more severe than mine. It was very difficult for me to function, certainly for—

[COUNSEL FOR DEFENDANT]: Objection.

COURT: Overruled.

A: —certainly for a week and into a second week. I felt like [plaintiff] was probably doing worse than I was.

Dr. Teague also indicated that plaintiff had trouble working as a result of his injuries. The trial court permitted Dr. Teague to testify that the income plaintiff would have earned with Dr. Teague had he not been impaired "would really be only limited by what [plaintiff] would like to do[,]" and that plaintiff would have "certainly" made more working for Dr. Teague than for the Heath Department.

Plaintiff also presented the testimony of an expert economist, Dr. Shirley Browning, Ph.D., who testified as to plaintiff's projected lost earnings. Dr. Browning testified that he based his analysis on plaintiff's employment with the health department and that he had not based his analysis "in any way" on the impact that working with Dr. Teague would have had on plaintiff's estimated earning potential.

Following the trial, the jury determined that plaintiff was entitled to recover $310,000.00 for his injuries. The trial court entered a judgment in this amount. Defendants filed a motion for a new trial pursuant to N.C.G.S. § 1A-1, Rule 59(a)(6),(7), and (8). The trial court denied defendant's motion.

## II.

Defendants appeal the trial court's denial of their motion for a new trial, contending that the trial court abused its discretion by per-

mitting the jury to hear inadmissible, prejudicial evidence. Specifically, defendants argue the following evidence was erroneously admitted: (1) evidence concerning plaintiff's employment with Dr. Teague; (2) Dr. Teague's testimony about his own injuries sustained in the collision which injured plaintiff; and (3) Dr. Teague's opinion regarding the level of pain plaintiff was experiencing.

The relevant portions of N.C.G.S. § 1A-1, Rule 59(a) (2003) provide the following grounds for a new trial:

(6) [e]xcessive or inadequate damages appearing to have been given under the influence of passion or prejudice;

(7) [i]nsufficiency of the evidence to justify the verdict or that the verdict is contrary to law;

(8) [e]rror in law occurring at the trial and objected to by the party making the motion. . . .

"The granting or denial of a motion . . . for a new trial is within the sound discretion of the trial judge. The ruling by a trial judge on a motion for a new trial is not subject to appellate review absent a 'manifest abuse of discretion.' " *Coletrane v. Lamb*, 42 N.C. App. 654, 656, 257 S.E.2d 445, 447 (1979) (quoting *Scott v. Trogdon*, 268 N.C. 574, 575, 151 S.E.2d 18, 18 (1966)).

### III.

[1] Defendants' first argument on appeal concerns the evidence about plaintiff's "prospective" employment with Dr. Teague. Defendants contend such evidence was impermissibly speculative and was, therefore, (1) impermissibly presented to the jury, and (2) improperly incorporated into the expert opinion testimony of plaintiff's economist. We disagree.

Speculative damages are not properly admissible at trial:

The amount of pecuniary damages is not presumed. The burden of proving such damages is upon the party claiming them to establish by evidence, (1) such facts as will furnish a basis for their assessment according to some definite and legal rule, and (2) that they proximately resulted from the wrongful act. If there is no evidence as to the extent of the pecuniary damage, there can be no recovery of substantial damages, where the elements of damage are susceptible of pecuniary admeasurement.

*Short v. Chapman*, 261 N.C. 674, 681-82, 136 S.E.2d 40, 46 (1964).

[C]ompensation for lost earning capacity is recoverable when such loss is "the immediate and necessary consequence[] of [an] injury." In determining the appropriate amount of compensation for such loss, "[t]he age and occupation of the injured person, the nature and extent of his employment, the value of his services and the amount of his income at the time, whether from fixed wages or salary, are matters properly to be considered by the jury[,]" and "great latitude" is allowed in the introduction of such evidence. "The right of cross-examination provides the opposing party opportunity to challenge estimates of this nature[.]"

*Curry v. Baker*, 130 N.C. App. 182, 191-92, 502 S.E.2d 667, 674-75 (1998) (quoting *Smith v. Corsat*, 260 N.C. 92, 95-96, 131 S.E.2d 894, 897 (1963), and *Goble v. Helms*, 64 N.C. App. 439, 446, 307 S.E.2d 807, 812 (1983)).

In the present case, plaintiff began his employment with Dr. Teague before the 28 July 2000 accident and received his first pay-check in the amount of $1,200 on 27 July 2000, the day before the accident. Moreover, Dr. Teague and plaintiff testified that under the terms of their oral agreement, plaintiff would work on a part-time basis as his health would permit, and he would be paid thirty-five percent of what he produced. Kim Williamson, a dental assistant in Dr. Teague's office who served as plaintiff's assistant, testified that plaintiff began working before the accident and attempted to work between three and five times after the accident. We conclude evidence of the employment with Dr. Teague and the associated compensation was not impermissibly speculative and provided a proper basis from which the jury could determine what damages, if any, to award based upon plaintiff's loss of employment with Dr. Teague.

Defendants urge that, notwithstanding the testimony just discussed, the employment relationship between plaintiff and Dr. Teague was necessarily speculative given plaintiff's medical history. This is so, defendants argue, because physical discomfort related to his medical condition caused him to sell his dental practice in 1997; it follows, defendants contend, that plaintiff was unable to practice dentistry in 2000. However, the record supports a contrary interpretation.

The record shows that plaintiff sold his dental practice in 1997 because he was no longer able to work between eight and ten hours per day, and it would have been difficult to maintain his practice while working only three to four hours per day. After taking a year

off, in September 1998, plaintiff began working approximately two-and-one-half days per week for the Buncombe County Health Department. At the time of the accident in July 2000, plaintiff was still employed by the Buncombe County Health Department, and he was also working part-time with Dr. Teague. In support of this testimony, plaintiff entered his time sheets, paychecks and tax forms from 1998 through November 2000 into evidence. Collectively, this evidence indicates plaintiff was unable to work on a full-time basis in 2000, but could, however, work on a part-time basis. Accordingly, we conclude that evidence that plaintiff could perform dentistry services on a part-time basis in 2000 was not speculative, and it was a proper basis upon which the jury could determine an award of damages.

Defendants also allege that the "speculative" evidence regarding plaintiff's employment with Dr. Teague tainted the testimony of plaintiff's expert economist, Dr. Browning. Specifically, defendants argue that Dr. Browning's testimony was impermissibly premised on the assumption that plaintiff left the Buncombe County Health Department to pursue the employment opportunity offered by Dr. Teague. We find this contention to be without merit.

Dr. Browning testified that in conducting his analysis, he assumed the following:

> [Plaintiff] would continue to work on a part-time basis until age sixty-five; that he would not have left the health department to work for another dentist, a Dr. Teague, unless he could have anticipated earnings at least equal to what he would have earned had he stayed at the health department. That's based on a concept in economics called opportunity cost, that a person would not willingly move to a situation which would be worse in terms of income than that which they already had. So I used the health department as sort of a minimum baseline situation there. . . .

Thus, in formulating his expert opinion, Dr. Browning used "opportunity cost" as an indicator that plaintiff would not leave his present employment with the health department for a lesser-paying job. Based upon that assumption, Dr. Browning used plaintiff's earnings and work history with the health department as a baseline for determining plaintiff's loss of earnings.

Moreover, Dr. Browning explicitly testified that his opinion was based upon plaintiff's earnings from the health department and that he did not consider "in any way" the new opportunity plaintiff may

have had with Dr. Teague's private practice in the analysis he submitted. Defendants have not challenged the methodology by which Dr. Browning formulated his opinion.

We conclude that evidence about plaintiff's employment with Dr. Teague (1) was not impermissibly presented to the jury, and (2) did not improperly factor into the expert opinion elicited from Dr. Browning. Accordingly, the trial court was not required to grant defendants' motion for a new trial on the basis of these arguments.

IV.

[2] Defendants' second argument on appeal is that the trial court erroneously permitted Dr. Teague to testify about injuries that he sustained in the same accident which injured the plaintiff. The trial court accepted plaintiff's argument that Dr. Teague's injuries were relevant to help establish the force of the impact which injured plaintiff.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2003). Evidence of the force of the impact between vehicles may be relevant in determining the severity of the impact and therefore the gravity of plaintiff's injury. Although "the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991). Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the "abuse of discretion" standard which applies to rulings made pursuant to Rule 403. *State v. Alston*, 341 N.C. 198, 237, 461 S.E.2d 687, 708 (1995).

This Court recently addressed a similar issue in *Griffis v. Lazarovich, et al.*, 161 N.C. App. 434, 588 S.E.2d 918 (2003). The plaintiff in *Griffis* sought to elicit testimony from an occupant in the same vehicle that she was also injured. Apparently, plaintiff sought to show that another occupant was "injured to the same degree [as plaintiff]." *Id.* at 439, 588 S.E.2d at 922. In addressing the trial court's decision to exclude the testimony, this Court stated, "[w]e cannot

conclude that testimony from one occupant of a vehicle regarding her injuries in an accident would tend to show that another occupant, with a different medical history, threshold for pain, and susceptibility to injury, was also injured to the same degree in the collision." *Id.* Our Court in *Griffis* ultimately concluded the plaintiff "failed to show any abuse of discretion in the trial court's refusal to admit this evidence." *Id. Griffis* does not stand for the proposition that evidence of another's injuries are *per se* irrelevant under any and all factual circumstances but merely reiterates that evidence is evaluated according to established standards of legal relevancy, Rule 401, and undue prejudice, Rule 403.

Accordingly, applying deferential review to the instant case, we hold the trial court did not err in admitting the contested testimony for the limited purpose of proving the force of the impact which injured plaintiff, and, further, the trial court did not abuse its discretion in failing to exclude it pursuant to Rule 403. This assignment of error is overruled.

V.

[3] Defendants' final argument is that Dr. Teague's opinion testimony regarding plaintiff's pain level was speculative and that such proof was required to be given by a medical expert. We disagree.

"The state of a person's mental and physical health, as derived from mere observation, is a proper subject for opinion testimony by a nonexpert." *Roberts v. Edwards*, 48 N.C. App. 714, 717, 269 S.E.2d 745, 747 (1980). In the present case, Dr. Teague had known plaintiff for over thirty years. Moreover, Dr. Teague testified he was aware of plaintiff's pre-accident medical condition and was a passenger in the car on the day of the accident. On these facts, the trial court did not err in permitting Dr. Teague to testify that plaintiff seemed to be in a lot of pain and that plaintiff was probably doing worse after the accident. This assignment of error is overruled.

The trial court did not abuse its discretion in denying defendants' motion for a new trial.

Affirmed.

Judges WYNN and TYSON concur.