An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e    P r o c e d u r e .

NO. COA13-1093
NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014


STATE OF NORTH CAROLINA

   v.

GREGORY AUSTIN GRIFFIN

Cabarrus County
Nos. 10 CRS 4678, 51075



Appeal by Defendant from judgments entered 9 May 2013 by Judge Tanya T. Wallace in Cabarrus County Superior Court. Heard in the Court of Appeals 5 February 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Mary L. Lucasse, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for Defendant.*


STEPHENS, Judge.


*Procedural History and Evidence*

Defendant Gregory Austin Griffin appeals from the judgments entered 9 May 2013 upon his convictions of felonious breaking and entering, possession of burglary tools, and having attained the status of habitual felon. The evidence at trial tended to

show the following: In the early morning hours of 2 April 2010, Christopher Andrew Shoe, Douglas Harwood, and a third employee were stocking shelves inside a closed Bi-Lo grocery store in Kannapolis. As Shoe worked near the front of the store, he heard loud popping noises coming from the front door. After calling out to the other employees that something was happening, Shoe went to the customer service desk about twenty feet from the front door. From that location, Shoe could see a man he later identified as Defendant prying open the door with what appeared to be a long metal screwdriver. Shoe saw Defendant's face in the crack of the doorway as the door popped open and the store alarm began to sound. On hearing the alarm, Defendant ran across the store parking lot, jumped into a van, and drove away down South Cannon Boulevard.

Harwood testified that he had come to the front of the store when Shoe called out to him. From a distance of about ten feet, Harwood saw a man wearing a plaid hooded jacket and jeans prying open the front door with a screwdriver. Harwood saw the face of the man whom he later identified as Defendant and, after the alarm sounded and Defendant fled in a red van, Harwood called 911.

Several officers with the Kannapolis Police Department, including Timothy Lafferty and Steven Webb, responded to the 911 call, and a red Ford Aerostar van was stopped a few minutes later on South Cannon Boulevard, about a mile and a half from the grocery store. After removing the driver and passenger from the van, the officers searched the cargo area. They found, *inter alia*, a fifty-five-gallon trash can, a large screwdriver, and a duffel bag filled with plastic bags of clothing which still had price tags and security sensors attached.

Harwood, who was still on the phone with a 911 operator, was told that police "had him [the perpetrator] in custody already." Webb picked up Shoe and Harwood from the grocery store and drove them in a patrol car to the location where the van had been stopped. Shoe and Harwood identified Defendant, who was standing behind the red van, as the man who had pried open the door. Harwood was also able to identify the van as the vehicle in which Defendant had fled the grocery store parking lot. Shoe testified that he had been shown two men during the show-up,[1] one of whom he identified as the perpetrator. Harwood testified that he had seen only Defendant at the show-up.

_____

[1] "Show-ups are typically defined as a procedure where the police take a witness, shortly after the commission of an observed

*Discussion*

On appeal, Defendant argues that the trial court (1) erred by admitting irrelevant evidence from Shoe, (2) committed plain error by admitting improper lay opinion testimony from two police officers that Defendant was guilty, and (3) committed plain error by admitting identification testimony which resulted from an "inherently suggestive" show-up. We find no prejudicial error in Defendant's trial.

*I. Relevancy of Shoe's Testimony*

Defendant first argues that the trial court erred by admitting irrelevant testimony from Shoe that Shoe had (1) previously identified another man as the perpetrator of an unrelated crime during a police line-up and (2) been trained to watch shoplifters so that he could identify them to police. We disagree.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

---

crime, to where the police are detaining the suspect, in order to give them an opportunity to make an identification." *State v. Rawls*, 207 N.C. App. 415, 420-21, 700 S.E.2d 112, 116 (2010) (citation and internal quotation marks omitted).

it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2013) (internal quotation marks omitted).

> Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the "abuse of discretion" standard which applies to rulings made pursuant to Rule 403.

*Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (citation and internal quotation marks omitted).

After defense counsel challenged Shoe's identification of Defendant on cross-examination, the State asked Shoe, who had testified that he was "a hundred percent" certain of his identification, how he could be so sure. Shoe stated, "I've been held up at gunpoint before at a past job." Defendant objected, but did not move to strike Shoe's answer. On *voir dire*, Shoe testified that he had previously identified a man who had held him up at work and that he had been trained to observe shoplifters for future identification to police. Defendant then renewed his objection, which the trial court overruled. Once

the jury returned to the courtroom, Shoe resumed his testimony on re-direct:

> A[.]  I just — I'm pretty good with faces. I know faces pretty good.  I just remember them.
>
> . . .
>
> Q[.]  How is it then that you know faces? How is it that you're confident that you're familiar with picking out faces?
>
> A[.]  I've been trained to remember people that shoplift and things, what they wear, and to get a description for the police for when they do come, so . . .
>
> Q[.]  Have you ever had to identify someone before?
>
> A[.]  Yes, sir, I have.  I've had to —
>
> [DEFENSE COUNSEL]:  Objection.
>
> THE COURT:  Overruled.
>
> . . .
>
> Q[.]  And what was the situation like?
>
> A[.]  I was held at gunpoint and I had to pick a person out of a 12-man line[-]up, and I have.
>
> Q[.]  So before this you've had experience where you've had to actually identify someone —
>
> A[.]  Yes, sir.  I mean, I fully understand that somebody could be an innocent man could be, you know, something like that.  I understand that and I face that burden.  I'm

> not going to put someone away for something they didn't do.
>
> Q[.] So how sure are you that this is the guy?
>
> A[.] I'm a hundred percent sure. I don't have no reason to lie. I was at work.

We first note that Defendant did not object to Shoe's statement that he had been trained to identify shoplifters. Accordingly, he has waived any prior objection to that testimony. *See State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995) ("Where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost.").

As for Defendant's objection when Shoe was asked whether he had ever previously "had to identify someone[,]" Defendant argues to this Court that this question was asked in an attempt to bolster Shoe's credibility by showing the jury that Shoe was "better qualified" than an ordinary person to make an identification when in fact the line-up identification Shoe had previously taken part in was different from the show-up identification procedure in this case. These arguments are misplaced. The exchange quoted above plainly reveals that Shoe did not perceive the question about his past experience as

relating in any way to his "qualifications" to identify criminal suspects. Shoe's response was simply that he had previously picked a suspect out of a police line-up and felt the burden of not choosing an innocent person. Thus, while Shoe's response suggested that he was taking the matter of Defendant's identification seriously, he made no claim that his previous experience gave him any special qualification and ability to identify Defendant at the show-up. The fact that an eyewitness has had a previous identification experience which led him to reflect on the importance of accuracy and honesty in making such determinations has some relevance with regard to the witness's credibility. Accordingly, we conclude that the trial court did not err in admitting Shoe's testimony as relevant.

*II. Lay Opinion Testimony*

Defendant next argues that the trial court committed plain error by admitting improper lay opinion testimony, primarily from Webb. We are not persuaded.

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to

plain error." N.C.R. App. P. 10(a)(4). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and internal quotation marks omitted). "Under the plain error rule, [the] defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993). Plain error review is available for alleged "(1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996).

Defendant asserts that Webb offered improper lay opinion that Defendant was guilty when he testified that (a) he had seen large screwdrivers like the one found in Defendant's van used as burglary tools, (b) Shoe and Harwood had "picked the right guy" when they identified Defendant at the show-up, (c) after those identifications and the discovery of the items in the van, officers had "probable cause[,]" (d) the clothing in the duffel bag had not been purchased, and (e) the large trash can could have been used to carry large amounts of merchandise out of a store quickly. Defendant contends that these comments

constituted impermissible lay opinion that a screwdriver satisfied the legal standard for a burglary tool, that Defendant was the perpetrator of the grocery store break-in, and that Defendant was guilty of other crimes (such as stealing the clothes found in the van). Defendant did not object to any of this testimony at trial. Accordingly, we review only for plain error, which, as noted *supra*, requires Defendant to establish that, had the testimony not been admitted, he would probably have been acquitted. *Jordan*, 333 N.C. at 440, 426 S.E.2d at 697. After careful review of all the evidence at trial, we conclude that, even assuming *arguendo* that admission of the challenged testimony was error, Defendant fails to show prejudice.

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2013). However, Rule 704

> provides that testimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

> Rule 704 does allow admission of lay opinion evidence on ultimate issues, but to qualify for admission the opinion must be helpful to the jury. Meaningless assertions which amount to little more than choosing up sides are properly excludable as lacking helpfulness under the Rules. Furthermore, while opinion testimony may embrace an ultimate issue, the opinion *may not* be phrased using a legal term of art carrying a specific legal meaning not readily apparent to the witness.

*State v. Elkins*, 210 N.C. App. 110, 124, 707 S.E.2d 744, 754 (2011) (citations, internal quotation marks, and brackets omitted; emphasis in original). "However, where the witness uses a term as a shorthand statement of fact rather than as a legal term of art or an opinion as to the legal standard the jury should apply, the testimony is admissible." *State v. Anthony*, 354 N.C. 372, 408, 555 S.E.2d 557, 581 (citation omitted), *cert. denied*, 354 N.C. 575, 559 S.E.2d 184 (2001), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002).

a. *Testimony about the screwdriver*

> If any person shall be found armed with any dangerous or offensive weapon, with the intent to break or enter a dwelling, or other building whatsoever, and to commit any felony or larceny therein; or shall be found having in his possession, without lawful excuse, any picklock, key, bit, or other implement of housebreaking; or shall be found in any such building, with intent to

> commit any felony or larceny therein, such
> person shall be punished as a Class I felon.

N.C. Gen. Stat. § 14-55 (2013).

Regarding the screwdriver, Webb agreed that the tool seized from the van was a 14- or 16-inch flathead screwdriver which, in Webb's experience, "could be used to pry things open. . . like a burglary tool[.]" Defendant cites *State v. Turnage*, 190 N.C. App. 123, 660 S.E.2d 129, *reversed in part and remanded on other grounds*, 362 N.C. 491, 666 S.E.2d 753 (2008), in support of his argument that admission of Webb's testimony that screwdrivers could be used "like a burglary tool" constituted plain error. Specifically, Defendant asserts that Webb opined "that the screwdriver was a burglary tool." We find *Turnage* easily distinguishable and Defendant's argument misplaced. In *Turnage*, a police officer "stated that, '[w]e searched him and found . . . a screwdriver and a metal rod in his pockets *indicating that he was just probably in the process of breaking into a residence*. Those types of tools used [sic] to break into residences.'" *Id.* at 129, 660 S.E.2d at 133. This Court found those "statements, particularly the first, to have impermissibly invaded the province of the jury, as [the officer] drew inferences from the evidence — a task reserved for the jury — to express an opinion as to [the d]efendant's guilt." *Id.*

(citation omitted).   In other words, the error in the *Turnage* testimony was the suggestion that the defendant possessed the specific tools *for the purpose of housebreaking and that he had just used them for that purpose*.   *See id.*

In contrast, Webb merely stated that a screwdriver like the one Defendant possessed *could be* an implement for housebreaking. "[I]t is common knowledge that . . . screwdrivers can be, and may be, used as implements of housebreaking."   *State v. Cadora*, 13 N.C. App. 176, 178, 185 S.E.2d 297, 298 (1971) (citation omitted).   For example, in *State v. Robinson*, the

> defendant was found inside a private office in a private establishment without permission, standing behind the owner's desk, in possession of a screwdriver and an icepick.   The owner heard [the] defendant shake the desk drawer.   Upon being discovered, [the] defendant tried to leave. He gave conflicting statements as to his purpose in being there.   Although the tools possessed by [the] defendant were capable of legitimate use, under the circumstances shown by the State, a legitimate inference can be drawn that [the] defendant possessed the screwdriver and icepick for the purpose of breaking into the building.

115 N.C. App. 358, 363, 444 S.E.2d 475, 478, *cert. denied*, 337 N.C. 697, 448 S.E.2d 538 (1994).   Similarly, here, Harwood and Shoe both testified that they saw Defendant using a large screwdriver to pry open the locked doors of the grocery store,

and that when Defendant saw them and heard the alarm sound, he fled the scene. In light of the eyewitness testimony from Harwood and Shoe, we cannot conclude that, absent Webb's remark about the screwdriver being of a sort which *could be used* for housebreaking, the jury would probably have acquitted Defendant of the charge brought pursuant to section 14-55.

*b. Testimony the witnesses "picked the correct guy"*

Defendant also argues that the trial court committed plain error in admitting, without objection, Webb's responses to questions from the State about the show-up, where Harwood and Shoe were shown Defendant and the other man discovered in the red van:

> Q[.] So [Harwood and Shoe] were actually given two people to pick from.
>
> A[.] Yes.
>
> Q[.] One of which [sic] they had seen, one of which they had presumably never seen as far as we know, and they picked the correct guy.
>
> A[.] Exactly, yes, sir.

Defendant contends that this testimony is analogous to the testimony by a law enforcement officer held inadmissible in *Elkins*: "I felt like I was building a solid case. [The defendant] was, indeed, the offender in this case." 210 N.C.

App. at 125, 707 S.E.2d at 755.  This Court observed that, while

> Rule 704 does allow admission of lay opinion evidence on ultimate issues, Rule 701 requires that, to qualify for admission, the opinion evidence must be helpful to the jury.  Here, we do not believe that the statement, "I felt like I was building a solid case; [the defendant] was, indeed, the offender in this case," is helpful, pursuant to Rule 701, to the determination of a fact in issue.  Rather, the foregoing statement is solely and simply an opinion of the ultimate issue of [the d]efendant's guilt, and as such, the statement's admission was error.

*Id.* at 125-26, 707 S.E.2d at 755 (citations, some internal quotation marks, and some brackets omitted).

Here, we note that both Defendant and the other man in the van were suspected of involvement in the break-in at the grocery store, and both were eventually charged with that offense.  Webb's agreement to the prosecutor's question can be read as an attempt to clarify the show-up procedure, to wit, that Harwood and Shoe were shown two men, only one of whom they had seen prying open the door, and that they both identified Defendant, rather than the other man in the van, as the man they had seen.  In that light, the comment could have been "helpful, pursuant to Rule 701, to" the jury in understanding the show-up and thus in assessing the weight to be given to the identification of Defendant by Harwood and Shoe.  *See id.* at 126, 707 S.E.2d at

755. If so, its admission was not error.

Further, even if the testimony from Webb was "solely and simply an opinion of the ultimate issue of Defendant's guilt," *id.*, such that its admission *was* error, we conclude it is not probable that, absent this brief testimony, Defendant would have been acquitted. Two witnesses positively identified Defendant as the man they saw prying open the door with a screwdriver and then fleeing in a van, and Defendant was quickly stopped in a van nearby in possession of a screwdriver like that used to pry open the door. In light of the strong evidence of his guilt, Defendant cannot show plain error in the admission of Webb's testimony.

*c. Testimony about "probable cause"*

Defendant also contends that the court committed plain error when it admitted testimony from Webb and Lafferty that Harwood's and Shoe's identification of Defendant gave them probable cause to continue their investigation of the grocery store break-in. However, as noted *supra*, "where the witness uses a term as a shorthand statement of fact rather than as a legal term of art or an opinion as to the legal standard the jury should apply, the testimony is admissible." *Anthony*, 354 N.C. at 308, 555 S.E.2d at 581.

Lafferty was asked about the role identifications generally play in investigations, not about the specific show-up identifications of Defendant by Shoe and Harwood:

> Q[.] And what happens after [a witness is] positive, after you have the show[-]up I.D. and it's positive identification, what happens next?
>
> A[.] It helps us build our probable cause, which then we continue our investigation further. Time is no longer of an essence so we can conduct searches. You know, when we get them back to the station, typically we're going to process them for that felony crime if it's a felony or misdemeanor, Mirandize, attempt to get statements. It just allows us to continue our investigation.

Webb used the phrase in discussing his investigation of the Bi-Lo break-in:

> Q[.] Did [Shoe and Harwood] give you a percentage of certainty [about their identifications of Defendant]?
>
> A[.] They said they were 100 percent [certain].
>
> Q[.] If it was anything less than a hundred percent, what would you have done?
>
> A[.] If it was less than a hundred percent, we probably would have investigated a whole lot more before we — and I say that not like we stopped at that point, Hey, we got the guys. But at that point, we probably wouldn't have arrested. We would have had to dig a little deeper and go after other

aspects.

Q[.] But with the hundred percent confidence, you proceeded along to do some other investigation?

A[.] That along with the things that we retrieved from the van prior to them even going up there, we believed that probable cause had been met.

Here, Lafferty's testimony was only about his general investigative process and not about Defendant at all. Webb used the phrase "probable cause" merely as a shorthand reference to explain the course of the investigation and why he arrested Defendant following the identifications by Shoe and Harwood. In any event, "probable cause" as a legal term of art was utterly unrelated to any matter before the jury or any legal standard they were required to apply. Accordingly, the trial court did not err in admitting this testimony.

*d. Testimony about other crimes*

Defendant next contends that the court committed plain error in allowing Webb to testify that they were suspicious that the clothes found in the duffel bag "were taken without being purchased" and that the trash can could have been useful for moving "a bunch of stuff in a hurry[.]" Defendant asserts that this lay opinion testimony violated Rule 701 by invading the province of the jury. *See* N.C. Gen. Stat. § 8C-1, Rule 701.

Webb's comments could be construed as suggesting that Defendant had stolen the clothes found in the duffel bag. However, Defendant was not being tried for any charges related to the clothes, and thus Webb's remarks were not relevant to any issue before the jury. Accordingly, this testimony was plainly not invading the province of the jury, and its admission was not error. Further, in light of the evidence of his guilt, to wit, the two eyewitness identifications and Defendant's nearly immediate apprehension nearby in possession of a screwdriver like that used in the crime, we see no likelihood that this testimony had any impact on the jury's verdict. Thus, Defendant cannot satisfy either requirement needed to establish plain error in the admission of Webb's testimony. These arguments are overruled.

*III. Identification of Defendant via a Show-up*

Defendant's final argument is that the trial court committed plain error by admitting identification testimony which resulted from an "inherently suggestive show-up." We are not persuaded.

Defendant did not object to Harwood's or Shoe's identification of him as the man they saw pry open the grocery

store door with a screwdriver.  Accordingly, we review only for plain error.

> Our courts apply a two-step process for determining whether an identification procedure was so suggestive as to create a substantial likelihood of irreparable misidentification.  First, the Court must determine whether the identification procedures were impermissibly suggestive.  Second, if the procedures were impermissibly suggestive, the Court must then determine whether the procedures created a substantial likelihood of irreparable misidentification.  Even though they may be suggestive and unnecessary, show-ups are not *per se* violative of a defendant's due process rights.

*Rawls*, 207 N.C. App. at 423, 700 S.E.2d at 118 (citations and internal quotation marks omitted).

In *Rawls*, an officer "explained to [the witness] what a show-up is and told her, '[T]hey think they found the guy.'  By the time [the witness] arrived at the apartments and saw [the] defendant, he was detained and sitting down, and '[t]here were several officers around.'"  *Id.*  This Court concluded that the

> Show[-]up procedure [wa]s analogous to the one reviewed in [*State v.*] *Richardson*, 328 N.C. [505,] 511, 402 S.E.2d [401,] 405 [(1991)].  In *Richardson*, three witnesses identified the defendant as the man they had seen at their workplace a few hours earlier.  *Id.*  During the identification, the defendant "was sitting alone or with uniformed personnel in the security office at the hospital" and "investigating officers

> told [two of] the witnesses [the] defendant was a suspect" before those witnesses saw him. *Id.* The Supreme Court determined that "[t]he identification procedures the officers chose, coupled with their statements to two of the three witnesses that 'they had a suspect,' were unduly suggestive." *Id. See also* [*State v.*] *Oliver*, 302 N.C. [28,] 45, 274 S.E.2d [143,] 194 [(1981)] (holding show-up procedure unduly suggestive when coupled with statement by officers to witness that he would have chance, at police station, to see again man who attacked his grandfather).

*Id.* at 423-24, 700 S.E.2d at 118.

Here, the 911 operator told Harwood "they had him [the suspect] in custody already[,]" and Shoe testified that he was told "they had gotten a person and we had to go and see if it was the right person." When Harwood and Shoe viewed Defendant from the patrol car, he was handcuffed and standing behind the van in the presence of several police cars and officers. These circumstances are not meaningfully distinguishable from those in *Richardson* and *Oliver*, and thus we conclude that the show-up procedure here was unduly suggestive.

However, just as in *Rawls*, "even though the show-up was impermissibly suggestive, we find that there was no substantial likelihood of irreparable misidentification." *Id.* at 424, 700 S.E.2d at 118.

> When evaluating whether such a likelihood exists, courts apply a totality of the circumstances test. For both in-court and out-of-court identifications, there are five factors to consider in determining whether an identification procedure is so inherently unreliable that the evidence must be excluded from trial: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Id.* at 424, 700 S.E.2d at 118-19 (citations and internal quotation marks omitted).

As for the first factor, Harwood saw the man prying open the door from a distance of ten feet and "got a good look at . . . what he was wearing[,]" while Shoe testified that he saw the man from a distance of only twenty feet and that the light lit up the man's face so that he was able to get a good look at him. Both witnesses were entirely focused on the man prying open the door. Only Harwood provided a description of the man's clothes and vehicle: "a black male wearing a plaid shirt with gray hair or a gray hood, blue jeans." Harwood also described the vehicle as a red van headed south on South Cannon Boulevard. Defendant is a black man who was wearing a plaid shirt and blue jeans and

who was stopped minutes later in a red van headed south on South Cannon Boulevard.

Both Harwood and Shoe testified to being 100 percent certain about their identification of Defendant at the show-up and in court during trial. Finally, only about five to ten minutes passed between the crime and the show-up identifications here. In sum, the totality of the circumstances establish that impermissibly suggestive show-up procedures did not create a "substantial likelihood of irreparable misidentification." *See id.* at 424, 700 S.E.2d at 118. Accordingly, this argument is overruled.

Defendant also briefly argues that, because there could be no strategic reason for trial counsel's failure to move to suppress the identification evidence or object to its admission, Defendant received ineffective assistance of counsel. "In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal." *State v. Stroud*, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547, *cert. denied*, 356 N.C. 623, 575 S.E.2d 758 (2001). The record before this Court does not permit us to review the merits of this claim, and accordingly, we dismiss it without prejudice to Defendant's right to raise it in a motion

for appropriate relief. *See id.* at 554, 557 S.E.2d at 547 ("Our Supreme Court has instructed that should the reviewing court determine the IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's rights to reassert them during a subsequent MAR proceeding.") (internal quotation marks omitted).

NO ERROR in part; NO PREJUDICIAL ERROR in part; DISMISSED in part.

Judges BRYANT and DILLON concur.

Report per Rule 30(e).