IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-374

 Filed: 5 November 2019

Durham County, Nos. 16 CRS 58002–03

STATE OF NORTH CAROLINA

 v.

DARWIN JOSUE PERALTA

 Appeal by defendant from judgments entered 4 October 2017 by Judge Henry

W. Hight, Jr., in Durham County Superior Court. Heard in the Court of Appeals 13

March 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General M. Elizabeth
 Guzman, for the State.

 Cooley Law Office, by Craig M. Cooley, for defendant-appellant.

 BRYANT, Judge.

 Where an expert witness did not impermissibly vouch for the credibility of

another witness, the trial court did not err in admitting the expert witness testimony.

Where defendant sought to admit impermissible character evidence, the trial court

did not err in denying the testimony. Where the admission of witness testimony was

proper, the trial court did not err in its instructions to the jury regarding that witness

testimony.

 On 3 October 2016, a Durham County Grand Jury indicted defendant Darwin

Josue Peralta on one count of statutory rape of a child by adult offender and three
 STATE V. PERALTA

 Opinion of the Court

counts of statutory sexual offense of a child by adult offender. A second indictment

was issued charging defendant with three counts of indecent liberties with a child.

Defendant pled not guilty, and his case was tried before the Honorable Henry W.

Hight, Jr., Judge presiding, on 26 September 2017. Defendant was found guilty by a

jury on all seven counts.

 In August 2016, while her mother, Nancy, was out of town, five-year-old Delia1

stayed overnight at a babysitter’s house where defendant resided. On the day before

Nancy returned, Delia called Nancy and asked her to tell defendant not to “lock her

up in the room anymore.” Thereafter, Delia told Nancy that defendant had been

“touching her in her privates[,]” “put his private organ inside [of] her[,]” and said,

“give me your milk.” Nancy took Delia to the emergency room at Duke Medical

Center, and the staff referred them to the Duke Child Abuse and Neglect Medical

Evaluation Clinic (“CANMEC”).

 During trial, the State proffered testimony from several witnesses including

seven-year-old Delia, Delia’s brother, Ryan2, Scott Snider, and Dr. Beth Herold.

 Delia testified before the jury on her birthday and had just turned seven years

old that day. Delia described, in significant detail, the numerous acts of sexual abuse

by defendant: that defendant touched her private area (“her pee-pee” and “her poo

 1 Pseudonyms were used to protect the identities of the juveniles and for ease of reading.
 2 See supra note 1.

 -2-
 STATE V. PERALTA

 Opinion of the Court

poo”) many times with his hands and his private part; that defendant “spit in his

hand” and touched his private part; and that defendant touched her in all the rooms

in the house. In particular, Delia described defendant bringing her to his bedroom,

taking off her clothes along with his clothes, and touching her while they were both

naked in bed. She stated this occurred sometimes while they were playing hide-n-

seek with other children in the house. Delia further testified that she hid in the

bathroom because defendant would touch her.

 Ryan, Delia’s ten-year-old brother, testified at trial that Delia would

sometimes ask him to stand at the door while she used the bathroom. He stated that

one day while playing hide-n-seek, he saw defendant and Delia laying on the bed

under the covers. Delia’s clothes were on the floor, and Delia was lying on her back

while defendant was looking in her direction and touching her private part. Ryan

testified to also observing the following behavior of defendant towards Delia: that

defendant “told [Delia] to go with [him] and then he [would] give her candy;” that

defendant kept candy in a blue bowl under his bed; and that defendant would only

play with Delia in the room during hide-n-seek and “never went [to] find [the other

children].” Ryan further testified that he asked Delia about lying down with

defendant and that she told him defendant touched her private parts. Ryan urged

her to tell their parents, but she was scared. Finally, she told them what defendant

had been doing to her.

 -3-
 STATE V. PERALTA

 Opinion of the Court

 The State presented Snider and Dr. Herold to testify about Delia’s medical

evaluation. Defendant objected to their testimony––specifically to the use of Delia’s

out-of-court statements in regard to their respective evaluations. The trial court

overruled defendant’s objections and permitted Snider and Dr. Herold to testify.

 Snider, a licensed clinical social worker at CANMEC, saw Delia on or about 8

September 2016 as a part of her evaluation to determine a medical diagnosis or

treatment. Snider video recorded his diagnostic interview with Delia, gathered

detailed statements from Delia describing the sexual contact with defendant, and

prepared a report. At trial, Snider testified to his interview with Delia: “She

described alleged sexual contact by a man named Darwin. She described that ‘he

[would] put his finger in my cosita,’ which was based upon determinations of

questioning her, was her genital area. And his finger [was] in her cosita, her back.

And that he had droul [sic] on his part, and put his part in her mouth and in her

cosita, and in her back. And her back, meaning her buttocks.” Snider also testified

that he asked Delia “where she would be when these things would happen. And she

sa[id], ‘in the room. In the bathroom. In the living room. His room.’ ” Specifically,

Delia told him about “a particular isolated incident in the bedroom: When she came

in and she says he put her on top of him in the bedroom, and he had no clothes on[.]”

Snider’s videotaped interview with Delia was played for the jury during his

testimony.

 -4-
 STATE V. PERALTA

 Opinion of the Court

 Dr. Herold, a nurse practitioner at CANMEC, testified about the physical

examination she performed on Delia, which was based on Delia’s statements provided

by Snider, and the CANMEC team evaluation.

 Although called as a witness for defendant, Detective Jesus Sandoval, who

investigated the case, testified about his interview with Delia, in which she told him

about the sexual acts performed by defendant: “She told me about the kids playing a

game, and that [defendant] called her into [another] room. . . . She said, ‘he was

touching me.’ And I said, ‘How did he touch you?’ And that is when she stated that

he pulled her pants down and ‘put his fingers in [her][.]’ . . . . And I said, ‘Where did

he put his fingers?’ She said, ‘Right here,’ and she pointed down to her genitals. And

she was on video, but she gestured down her genital area.” Detective Sandoval

further testified: “[B]asically she said that he carried her to the room. She said, ‘No’

so he picked her up and carried her there. . . . And I asked her, ‘Did that happen a lot

or just one time?’ And she said, ‘A lot of times.’ ”

 After being found guilty on all counts, defendant was sentenced to 300 to 420

months for statutory rape of a child, 300 to 420 months for three counts of statutory

sex offense with a child by an adult, and 16 to 29 months for three counts of indecent

liberties with a child. All sentences were to run consecutive to each other. Defendant

was ordered to register as a sex offender upon his release from prison and enroll in

satellite-based monitoring for the remainder of his life. Defendant appeals.

 -5-
 STATE V. PERALTA

 Opinion of the Court

 _________________________________________________________

 On appeal, defendant argues the trial court erred by: I) allowing the State to

introduce improper testimony from Dr. Herold, II) excluding statements from

rebuttal witnesses to be used during his defense, and III) issuing instructions to the

jury regarding certain testimony and evidence presented by the State.

 I

 Defendant first argues the trial court erroneously admitted opinion testimony.

On this record, defendant does not directly challenge the testimony of the child

victim, Delia, or Scott Snider. Instead, defendant argues that Dr. Herold’s testimony

was inadmissible because her expert opinion attested to the truthfulness of Delia’s

statements. Having not objected to the disputed testimony at trial, defendant now

urges that Dr. Herold’s statements detailing the process of diagnosing Delia

constituted plain error. After careful consideration, we disagree.

 In criminal cases, an issue that was not preserved by
 objection noted at trial and that is not deemed preserved
 by rule or law without any such action nevertheless may be
 made the basis of an issue presented on appeal when the
 judicial action questioned is specifically and distinctly
 contended to amount to plain error.

N.C.R. App. P. 10(a)(4) (2019). “For error to constitute plain error, a defendant must

demonstrate that a fundamental error occurred at trial.” State v. Lawrence, 365 N.C.

506, 518, 723 S.E.2d 326, 334 (2012). “To show that an error was fundamental, a

defendant must establish prejudice—that, after examination of the entire record, the

 -6-
 STATE V. PERALTA

 Opinion of the Court

error had a probable impact on the jury’s finding that the defendant was guilty.” Id.

(citation and quotation marks omitted).

 Our courts have

 set out the limits and restrictions on expert testimony in
 child sexual abuse cases. In a sexual offense prosecution
 involving a child victim, the trial court should not admit
 expert opinion that sexual abuse has in fact occurred
 because, absent physical evidence supporting a diagnosis
 of sexual abuse, such testimony is an impermissible
 opinion regarding the victim’s credibility. [A]n expert
 witness may testify, upon a proper foundation, as to the
 profiles of sexually abused children and whether a
 particular complainant has symptoms or characteristics
 consistent therewith.

State v. Wallace, 179 N.C. App. 710, 714, 635 S.E.2d 455, 459 (2006) (internal

citations and quotation marks omitted).

 In the instant case, defendant directs this Court’s attention to State v. Trent,

320 N.C. 610, 359 S.E.2d 463 (1987), State v. Parker, 111 N.C. App. 359, 432 S.E.2d

705 (1993), and State v. Bates, 140 N.C. App. 743, 538 S.E.2d 597 (2000),3 in

 3 In State v. Trent, our Supreme Court held that the expert gave a “limited basis” for his
diagnosis––presumably relying exclusively on the child’s statements of sexual abuse––where he
“repeatedly testified that his diagnosis was based upon the results of the pelvic exam, [which showed
the child’s hymen was not intact], and the history given to him by the victim. He cited no other basis
for his diagnosis.” 320 N.C. 610, 614, 359 S.E.2d 463, 465–66 (1987). The expert’s testimony was ruled
to be inadmissible.
 Similarly, in State v. Parker, this Court held the expert’s testimony to be inadmissible where
he testified that the child “had been sexually abused over a long period of time” and his opinion was
based “only on his interview with [the child] in which [the child] related a history of sexual abuse and
the fact that [the child’s] hymenal ring was not intact.” 111 N.C. App. 359, 366, 432 S.E.2d 705, 709–
10 (1993) (emphasis added).

 -7-
 STATE V. PERALTA

 Opinion of the Court

challenging Dr. Herold’s testimony as “she implied that Delia was sexually abused.”

Notwithstanding the notion that an inference was made by Dr. Herold, defendant

conceded during oral argument before this Court that Dr. Herold did not explicitly

testify to Delia’s diagnosis or state that Delia was sexually abused. Nevertheless, we

note that in the instant case, unlike the testimony from the experts in Trent, Parker,

and Bates, Dr. Herold did not reveal a conclusive diagnosis that Delia was sexually

abused.

 On direct examination, Dr. Herold testified about the “comprehensive”

procedures for conducting a medical evaluation on children to make a medical

diagnosis:

 [DR. HEROLD]: I work as a part of a team at [Duke’s]
 CANMEC. We see children when we evaluate children. We
 see them -- typically one medical provider and one social
 worker will see the child. And then once a week we do what
 is called Peer-Review, and we case-review a hundred
 percent of our cases. And on that team there are two Board
 Certified Child Abuse Pediatricians, and two Social
 Workers, and one fellow, and we Peer-Review every case.

 ....

 [THE STATE]: And when [Delia] came to your clinic, what
 if any actions did you take?

 In State v. Bates, the expert opined that the child was sexually abused after he completed the
child’s examination, which showed no physical evidence of abuse, and admitted that his diagnosis was
“based entirely on statements made by the child[.]” 140 N.C. App. 743, 748, 538 S.E.2d 597, 601 (2000)
(emphasis added). This Court ruled the testimony was inadmissible.

 -8-
 STATE V. PERALTA

 Opinion of the Court

 [DR. HEROLD]: We do complete medical evaluations. And
 that include[s] speaking to a caretaker, whoever brings the
 child; and we will speak to the caretaker and get a complete
 medical history. . . . And we also [complete] a social history,
 which [involves] speaking to the patient and finding out
 who lives in the home. We do -- I get an evaluation that
 include[s] risk factors, so I [can] do a full parent interview.
 ...

 [T]he social worker will then be getting a medical history
 from the child at the same time. And after . . . our social
 worker is done getting a medical history from the child, and
 I know how I need to treat the child, I will then do a medical
 exam on the child, and do any necessary labs or test, or
 anything that have been determined are necessary through
 the obtaining of medical history that the social worker will
 have done.

 [THE STATE]: And did you do that in this case?

 [DR. HERORD]: Yes, ma’am.

Dr. Herold detailed the examination process of a pre-pubescent child and her findings

from Delia’s examination––in which she revealed that Delia had a “normal genital

exam”––and testified that the absence of physical evidence was not uncommon after

72 hours of initial contact for a majority of cases involving children who had been

sexually abused.

 On cross-examination, Dr. Herold was expressly asked by defense counsel the

following questions:

 [DEFENSE COUNSEL]: And now on September 8, 2016,
 [Delia] is in your clinic, correct?

 [DR. HEROLD]: Yes.

 -9-
 STATE V. PERALTA

 Opinion of the Court

[DEFENSE COUNSEL]: And it is your understanding
that she has been raped, correct?

[DR. HEROLD]: I have never -- I had never heard that
word.

[DEFENSE COUNSEL]: It is your understanding that
[Delia] who is not able to give consent has been penetrated,
correct?

[DR. HEROLD]: It was my understanding that the child
had been digitally penetrated and anally penetrated by an
adult and we consider that sexual abuse.

....

[DEFENSE COUNSEL]: On the 8th of September, 2016,
you were not able to make any medical determination that
[Delia] had been penetrated, were you?

[DR. HEROLD]: Yes, I was.

[DEFENSE COUNSEL]: And how were you able to make
a medical determination of that?

[DR. HEROLD]: The medical evaluation, when we're
evaluating child sexual abuse, 90 to 95 percent of children
do not have medical findings. The medical diagnosis is
based on the entire evaluation which consist[s] of
statements that the child says, as well as history from the
patient, as well as the medical exam itself.

[DEFENSE COUNSEL]: And notwithstanding what the
child said, what the mother said, and in your capacity as a
Nurse Practitioner, and during your medical examination,
you were not able to make a determination based off of that
alone that [Delia] was penetrated; were you?

[DR. HEROLD]: Based upon the medical exam alone [we]
cannot make a diagnosis of penetration.

 - 10 -
 STATE V. PERALTA

 Opinion of the Court

 On redirect, Dr. Herold clarified that a conclusive finding for child sexual abuse

can be medically diagnosed in four situations: the child is pregnant, the child has

gonorrhea, the child has chlamydia, or the child has HIV. Dr. Herold further testified

to the significant parts of Delia’s team evaluation:

 [DR. HEROLD]: The statements that [Delia] provided and
 she provided clear statement[s] describing sexual abuse.
 She described the alleged perpetrator putting saliva, or she
 called it droul [sic] on his hand. She described details of
 him placing his finger inside of her genital, in her anus,
 and in her vagina. She described clear statements of these
 events occurring.

 At five years of age[,] this child was able to tell us what had
 happened, and give details that were details that were
 clear and concise details which led us to have the medical
 findings that we did.

 Following redirect, defense counsel expressly asked if the team evaluation

relied solely on Delia’s statements, in which Dr. Herold testified as such:

 [DEFENSE COUNSEL]: So what she said matters much
 more than any physical evidence that you did or did not
 find; correct?

 [DR. HEROLD]: We did a medical exam well after three
 days from when this child last had alleged contact with the
 alleged perpetrator. Therefore, I would not expect to find
 any findings on her medical exam. The most important
 part of a child’s evaluation, if it has been greater than 72
 hours, is the statement that the child provides.

 ....

 [DEFENSE COUNSEL]: But you did find [that] sexual
 abuse happened, correct?

 - 11 -
 STATE V. PERALTA

 Opinion of the Court

 [DR. HEROLD]: We found that the child gave clear and
 concise statement[s] regarding child sexual abuse.

 [DEFENSE COUNSEL]: So your testimony today is based
 [on] the statements that [Delia] made, correct?

 [DR. HEROLD]: It is based off a complete medical
 evaluation, not only her statements.

 Considering Dr. Herold’s testimony in its entirety, and as admitted by defense

counsel, Dr. Herold did not make a conclusive medical diagnosis. Although defendant

raises the holdings in Trent, Parker, and Bates, where the admission of the expert’s

medical diagnosis, which rested exclusively on the victim’s statements, was precluded

in these cases, Dr. Herold’s testimony was inapposite in the present case.

 Dr. Herold carefully explained the results of Delia’s examination, the statistics

of sexually abused children with normal medical exams, and the collective process of

the team evaluation––reviewing all the information that was obtained involving

Delia. Her “testimony was relevant not only to help the jury understand the results

of her examination, but also to demonstrate that a lack of physical evidence of sexual

abuse does not preclude sexual abuse when there is a passing of time between the

alleged incidents and the physical examination.” State v. Chavez, 241 N.C. App. 562,

569, 773 S.E.2d 108, 114 (2015).

 Moreover, we reject defendant’s contention that he was prejudiced by Dr.

Herold’s testimony that Delia gave “clear and concise” details about sexual abuse as

the record reveals that, if there was any error, defendant invited the error.

 - 12 -
 STATE V. PERALTA

 Opinion of the Court

Throughout Dr. Herold’s direct testimony, she repeatedly stated that Delia’s

statements about sexual abuse were “allegations.” However, on cross-examination,

defendant deliberately elicited testimony from Dr. Herold regarding whether she had

made a medical diagnosis that Delia had been sexually abused and what data she

collected to connect defendant to the alleged penetration. Therefore, defendant is

precluded from asserting prejudice from Dr. Herold’s statements when he invited the

error for which he now seeks relief from on appeal. See N.C. Gen. Stat. § 15A-1443(c)

(2017) (“A defendant is not prejudiced by the granting of relief which he has sought

or by error resulting from his own conduct.”).

 Notwithstanding defendant’s invited error, defendant has not demonstrated

that the jury would have reached a different result in light of all the other

unchallenged evidence presented at trial. This includes strong testimony from Delia

at trial and during videotaped interviews; from Ryan, who testified, inter alia, to

seeing defendant and Delia in bed together; from Snider; and from Detective

Sandoval. Thus, we conclude the trial court did not err by admitting Dr. Herold’s

testimony.

 II

 Defendant next argues the trial court erred by not allowing the testimony of

two defense witnesses who allegedly asked Delia’s mother to stop talking about sex

in front of children. We disagree.

 - 13 -
 STATE V. PERALTA

 Opinion of the Court

 “The admissibility of evidence is governed by a threshold inquiry into its

relevance.” State v. Griffin, 136 N.C. App. 531, 550, 525 S.E.2d 793, 806 (2000).

“Evidence is relevant if it has any tendency to make the existence of any fact that is

of consequence to the determination of the action more probable or less probable than

it would be without the evidence.” Dunn v. Custer, 162 N.C. App. 259, 266, 591 S.E.2d

11, 17 (2004) (citing N.C.G.S. § 8C-1, Rule 401 ([2017])). “The trial court may exclude

evidence that is irrelevant, non-probative, speculative, not within a witness’ personal

knowledge, and calling for legal conclusions from a lay witness.” State v. Pallas, 144

N.C. App. 277, 283, 548 S.E.2d 773, 779 (2001) (emphasis added).

 Although the trial court’s rulings on relevancy technically
 are not discretionary and therefore are not reviewed under
 the abuse of discretion standard applicable to Rule 403,
 such rulings are given great deference on appeal. Because
 the trial court is better situated to evaluate whether a
 particular piece of evidence tends to make the existence of
 a fact of consequence more or less probable, the appropriate
 standard of review for a trial court’s ruling on relevancy
 pursuant to Rule 401 is not as deferential as the abuse of
 discretion standard which applies to rulings made
 pursuant to Rule 403.

Dunn, 162 N.C. App. at 266, 591 S.E.2d at 17 (internal citations and quotation marks

omitted). When it can be shown that a witness has personal knowledge of a witness’s

character for truthfulness or untruthfulness, that opinion testimony can be admitted

as evidence of credibility. State v. Hernendez, 184 N.C. App. 344, 349, 646 S.E.2d

579, 583 (2007).

 - 14 -
 STATE V. PERALTA

 Opinion of the Court

 In the instant case, defendant sought to introduce testimony of witnesses that

he proffered as relevant to prove a “central part of his theory of defense [ ] that [Delia]

heard these type[s] of statements and these type[s] of sexual statements from [her

mother] when she was around her boyfriends or talking about her boyfriends[.]”

However, it is clear that defendant’s attempt to introduce the testimony was premised

on “undermining the truthfulness of [Delia’s] statements;” in other words, to “raise

doubts about the origin of [Delia’s] ability to graphically describe certain sex acts.”

 Although premised as an attempt to impeach the mother’s credibility,

defendant’s proposed testimony was, in reality, an attempt to put forth impermissible

character testimony as to Delia’s credibility. Neither witness could offer an opinion

as to Delia’s credibility. All they could offer was speculation that comments made by

Delia’s mother “might” serve as the basis of Delia’s explicit statements of sexual

abuse, not whether Delia personally experienced the abuse. Defendant was unable

to demonstrate that the proposed witnesses had sufficient personal knowledge to

form an opinion about Delia’s credibility.

 Thus, because the proffered testimony was too speculative and not within the

witnesses’ personal knowledge, the trial court did not err in excluding the testimony.

 III

 Finally, defendant argues the trial court erred by failing to properly issue

limiting instructions to the jury as to Dr. Herold’s testimony regarding the statistics

 - 15 -
 STATE V. PERALTA

 Opinion of the Court

of sexually abused children with normal exams and Delia’s out-of-court statements

about sexual abuse that she made to Snider. We disagree.

 Defendant did not request a limiting instruction as to Dr. Herold’s testimony

at trial but on appeal, requests that we review his argument for plain error, and we

do so. See Lawrence, 365 N.C. at 518, 723 S.E.2d at 334 (“For error to constitute plain

error, a defendant must demonstrate that a fundamental error occurred at trial.”);

see also id. (“To show that an error was fundamental, a defendant must establish

prejudice—that, after examination of the entire record, the error had a probable

impact on the jury’s finding that the defendant was guilty.” (citation and quotation

marks omitted)).

 Here, as we have already considered defendant’s arguments regarding Dr.

Herold as a witness and found no error in allowing her testimony, we reject

defendant’s argument that trial court was “obligated to issue a limiting instruction

informing jurors [that] they could only consider the ‘profile’ testimony for

corroborative purposes[.]” Dr. Herold properly testified as to her findings from Delia’s

examination, her history of dealing with child sexual abuse cases, and the process to

complete a medical evaluation––which included the statements provided by Delia.

Further, the evidence––the explicit testimony by Delia of defendant’s acts of sexual

abuse, the testimony of her brother Ryan, Delia’s consistent statements to Snider and

Detective Sandoval, and the video of Delia’s statements––when viewed collectively by

 - 16 -
 STATE V. PERALTA

 Opinion of the Court

the jury, was significant and sufficient evidence for the jury to find defendant guilty.

Even assuming the trial court erred in not giving limiting instruction as to Dr.

Herold’s testimony, there is no probability that the jury would have reached a

different result under the circumstances.

 Accordingly, for the reasons stated herein, we hold defendant received a fair

trial, free from any prejudicial error.

 NO ERROR.

 Judges DILLON and ARROWOOD concur.

 - 17 -